## GRADY *v.* UNSATISFIED CLAIM AND JUDGMENT FUND BOARD

[No. 91, September Term, 1970.]

*Decided November 11, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Harvey B. Steinberg,* with whom were *Steinberg & Seres* on the brief, for appellant.

*Robert J. Thieblot,* with whom were *Donald C. Allen* and *Allen, Thieblot & Alexander* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

Appellant Grady was a rear seat passenger in an automobile which was forced off the road in Anne Arundel County on March 28, 1969, by an oncoming "phantom motor vehicle." Testimony indicated that the appellant and two former Army friends were driving northbound on Whiskey Bottom Road near Laurel, about three-fourths of a mile from Route No. 198. At the point where there is a sharp left curve in the road they were forced to swerve to the right to avoid an oncoming vehicle. The car in which Grady was a passenger came to an abrupt halt upon striking a tree and a pole, and Grady was immediately rendered unconscious; he suffered lacerations and two broken vertebrae in his neck as the result of the accident.

Trooper R. E. France of the Maryland State Police was summoned to the scene by radio, and arrived approximately one-half hour after the accident. When he arrived, the appellant, the driver and the front seat passenger were being removed to the hospital by the Laurel Rescue Squad, so that the trooper was unable to speak to any of them at that time. Trooper France testified at the hearing below that he conducted an investigation at the scene "as to witnesses and so forth, anyone that had seen the accident or seen anything which could give me any information as to another vehicle, and I was unable to locate anything." (It should be noted at this juncture that Judge Childs, presiding in the lower court, stated that he believed the appellant's testimony concerning the unidentified automobile, and we assume that such an automobile did exist for the purposes of this decision.) Trooper France also noted that the area surrounding the scene of the crash was a residential one, and that there were approximately four houses "back off the roadway" at the curve in the road.

After the investigation at the scene of the accident, Trooper France proceeded to the hospital and interviewed the driver and front seat passenger, who were unable to provide any description of the other vehicle. France was unable to interview the appellant in the hospital, as he was undergoing treatment at the time. Subsequently, Grady was released and returned home to New Jersey without ever having contacted the Maryland State Police.

Grady filed a petition in the Circuit Court for Anne Arundel County to allow suit against the Unsatisfied Claim and Judgment Fund Board (Fund), and after a hearing and submission of authorities by counsel, Judge Childs denied Grady permission to sue on the ground that he had not made "all reasonable efforts" to identify the phantom vehicle and its owner and driver as required by the Maryland Code.

The appellant contends that, where the police question witnesses at the scene and are unable to obtain a description of the vehicle or make further efforts at identifying that vehicle, the statutory requirement of making "all reasonable efforts" has been met, and the suit against the Fund should be allowed. In effect, appellant would urge that where there is an unfruitful cursory police investigation the statute does not require the claimant to make any efforts on his own behalf. We disagree, and affirm the ruling of the lower court.

Our Unsatisfied Claim and Judgment Fund Law (Maryland Code (1967 Repl. Vol.) Art. 66½, §§ 150-179) provides protection for the blameless victims of accidents caused by uninsured or irresponsible drivers. The reason for its enactment was stated by this Court in *Maddy v. Jones,* 230 Md. 172, 186 A. 2d 482 (1962) as follows:

> "* * * It seems obvious that the Legislature intended, in enacting this statute, primarily to protect its own citizens, particularly those least able financially to bear the loss or injury inflicted by irresponsible or unidentified motorists,

many of whose victims would otherwise require medical and welfare attention at public costs.". 230 Md. at 179.

Our statute is patterned after New Jersey's (NJSA, Title 39, Chapter 6, §§ 61-91), and for this reason appellant Grady, a resident of New Jersey, is a "qualified person" under the terms of our statute.[1]

This Court has many times stated that, in view of the remedial nature of the statute, it should be construed liberally in order to give effect to its beneficial purpose. At the same time we have consistently stressed the importance of protecting the Fund from fraud or abuse. See *Hawks v. Gottschall*, 241 Md. 147, 215 A. 2d 745 (1966); *Unsatisfied Claim and Judgment Fund Board v. Holland*, 241 Md. 294, 216 A. 2d 525 (1966); *Mundey v. Unsatisfied Claim and Judgment Fund Board*, 233 Md. 169, 195 A. 2d 720 (1963).

The particular provision of the Code with which we are concerned in the case at bar is Article 66½, § 167. That section outlines procedures under which the victim of a hit and run accident may recover from the Fund. As a condition precedent to its allowing an action against the Fund, the court must be satisfied that:

> "(f)  All reasonable efforts have been made to ascertain the identity of the motor vehicle and of the owner and operator thereof and either that the identity of the motor vehicle and the owner and operator thereof cannot be established, or that the identity of the operator, who was operating the motor vehicle without the owner's consent, cannot be established." Code (1967 Repl. Vol.), Art. 66½, § 167 (f).

The above provision was enacted for the protection *of the Fund*, and it would therefore appear that the consider-

---

1. Section 150(g) of our statute provides protection to residents of other states which provide for recourse "of substantially similar character" to residents of Maryland.

ations which may dictate a liberal interpretation of the statute as a whole would not necessarily compel the same liberal interpretation of this particular subsection. As we have previously stated in *Mundey v. Unsatisfied Claim and Judgment Fund Board, supra,* wherein we were called upon to interpret the notice requirements of the statute:

> "* * * Rights conferred under this act are purely legislative creations, and (within constitutional limits) they may be made subject to such conditions as the Legislature may see fit to impose. * * * The General Assembly may well have regarded this as a sufficiently liberal provision to carry out the beneficent and remedial purposes of the statute. We see no basis for our attributing to the General Assembly an intention to be more generous than the ordinary meaning of the words it employed would import. If it desires to go further, it can, of course, readily amend the statute. The question of social policy, in our estimation, is peculiarly appropriate for legislative, not judicial, determination." **233** Md. at 174.

In the case before us, the appellant did nothing at all to determine the identity of the other vehicle, its owner or driver. He urges that the state trooper made "reasonable efforts" in his investigation and was unsuccessful, and to require the appellant to do anything after a nonproductive police investigation would be a "subservience to technicality." In Mr. Grady's particular situation this is certainly a self-serving bootstrap argument, as he did not even inquire of the police as to whether there was any investigation or what the results of that investigation may have been.

In our opinion, to allow Grady to equate "reasonable efforts," as required by the statute, with a pro forma negative police report about which he had made no inquiry and with which he was unfamiliar until the day of the hearing some three months after the accident, would be

playing fast and loose with the intent of the statute. The following excerpt from the cross-examination of Grady reveals his remarkable nonchalance concerning what happened:

> "Q. Was there any collision with anything other than I think a tree and a pole?
>
> "A. To my knowledge, no, I didn't even know we had hit a tree and a pole until this morning [day of the hearing] when I saw the accident report. I wasn't even aware of that. It happened and I was out.
>
>         \* \* \*
>
> "Q. Did you talk to the police about this accident?
>
> "A. No sir, I never talked to any police officer about this accident."

This Court has recently denied recovery to a claimant who had failed to conduct any investigation after being forced off the road by an unidentified automobile. In *Hickman v. Unsatisfied Claim and Judgment Fund Board,* 255 Md. 267, 257 A. 2d 426 (1969), Chief Judge Hammond, speaking for the Court stated:

> "The difficulty with these arguments is that the statute requires 'all reasonable efforts' to be made to ascertain the identity of the car involved and its owner and driver. *It does not permit the injured person to be the judge of the need to investigate or of the probability of success.*" 255 Md. at 270 (Emphasis supplied.)

Although in *Hickman* the claimant never mentioned the mystery vehicle to the investigating officer, the case is similar to the instant case in many respects, and the language set forth above seems peculiarly applicable to the validity of the conclusion which we reach in this opinion.

"Reasonable efforts" will differ according to the facts and circumstances of each case, and it is not a term which is easily defined or delineated. Whether it would have been

reasonable under the circumstances of this case to require the appellant to place an advertisement in a newspaper in an effort to locate potential witnesses or to personally interview the residents of the homes in the area need not be decided here.[2] At the very least, reasonable efforts in the case at bar would require the appellant to communicate with the State Police to determine whether or not they had even conducted any investigation, and that was not done. In view of the fact that the appellant failed to take even this initial step, we need not decide whether he should have gone further. As in *Hickman,* we are not prepared to accept a total absence of any action by the claimant as "reasonable efforts."

> *Judgment of the lower court affirmed; appellant to pay costs.*

---

2. The testimony of Trooper France at the hearing below is not clear as to whether the people whom he questioned at the scene of the accident were passing motorists who had stopped or whether the local residents had come out of their homes at the sound of the crash. Neither is it clear who first reported the accident, but in view of the fact that Trooper France responded to a radio message, it would seem to be a logical point of inquiry, for one interested in taking "reasonable efforts" to identify the unknown vehicle, to ask of the police whether they had any information as to who placed the call to them. It is entirely possible that the person who first reported the accident was an eyewitness to the crash.