# DIAMOND ET UX. v. UNSATISFIED CLAIM AND JUDGMENT FUND BOARD

[No. 150, September Term, 1972.]

*Decided February 14, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Stanley H. Miller*, with whom was *William O. Goldstein* on the brief, for appellants.

*E. B. Harris, Jr.*, with whom were *Hardwick, Tripoda & Harris, Francis B. Burch, Attorney General*, and *G. Raymond Valle, Assistant Attorney General*, on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

After the Superior Court of Baltimore City (Harris, J.) denied appellants, John and Lovetta Diamond, permission to sue the Unsatisfied Claim and Judgment Fund Board under what was Maryland Code (1957, 1970 Repl. Vol.), Art. 66½, § 7-621, this appeal followed.[1] That section in part reads:

> "Any qualified person, who, after June 1, 1964, suffers damages resulting from bodily injury or death or damage to property caused by an operator or owner whose whereabouts cannot be ascertained . . . may apply to a court of competent jurisdiction for an order permitting him to bring an action therefor against

---

1. The trial court and the parties to this suit referred to this section as numbered in the 1970 Replacement Volume of the Code, although reference should have been made to the Code provisions and numbering that existed at the time of the accident. At that time, the provisions of what was to become § 7-621 of Art. 66½ were enacted as Ch. 187 Laws of Maryland 1964 to be codified as Code (1957), Art. 66½, § 167A. Even though there have been minor amendments since 1964 these amendments do not pertain to the issues in this case and therefore the 1970 Repl. Vol. reference will be used in this opinion. However, we note that this section, as well as the entire subtitle 7 of Art. 66½, was repealed by Ch. 73, § 2, Laws of Maryland 1972, effective January 1, 1973. But, provision is made in § 243G of Ch. 73 for continuing in force §§ 7-606 through 7-629 of Art. 66½ for claims arising before January 1, 1973. Additionally, similar provisions as found in § 7-621 are incorporated into § 243H of Ch. 73 for claims arising after January 1, 1973 brought against the Maryland Automobile Insurance Fund.

the Board when the court is satisfied upon hearing of the application, that

＊ ＊ ＊

(3) The applicant has instituted a cause of action against the operator or owner, or both, of the vehicle whose whereabouts cannot be ascertained in order to effect service under the Maryland Rules and service of process in the cause of action has twice been returned non est;

(4) All reasonable efforts have been made to ascertain the whereabouts of the operator or owners, or both, of the vehicle in order to obtain personal service under the Maryland Rules and he cannot be located, and the applicant will be required to show affirmatively, to the court's satisfaction, that such efforts have been made; . . . ."

The Diamonds had filed their declaration against Bryon Otis and Robert Gladys Griffin, Jr. on April 15, 1969. There it was alleged that nearly three years before, on August 28, 1966, appellant, John Diamond, was driving his automobile in Baltimore City on Baltimore Street, and had stopped near that street's intersection with Paca Street in obedience to a traffic light. While in that position his vehicle was struck in the rear by an automobile owned by Otis, a New Jersey resident, which was being negligently operated by Griffin, then a resident of Baltimore.

When service of process was returned in June 1969 "non est" as to each defendant for the second time, appellants filed, on October 29, 1969, their petition for leave to sue the Board, alleging that Otis, the owner, could not be located for service of process. This petition, which for some unexplained reason was specifically drafted to apply only to Otis, was considered by Judge Grady who, on August 4, 1970, granted appellants' request for leave to sue the Board "as to Bryon S. Otis, defendant." But the judge further ordered that "this

decision will be effective only if the defendant Robert Gladys Griffin, Jr. is properly served." Except for the attempted service of process, the record does not disclose that any effort was made to contact or locate Griffin following the accident until November or December 1970, when the Zumbrun Investigating Bureau, a private agency, was employed to locate that defendant. The agency reported to the Diamonds by letter, dated February 18, 1971, that it was unable to ascertain the whereabouts of Griffin as he had apparently fled from Maryland "about three years ago after he had taken a large sum of money from a restaurant" where he had worked. On September 16, 1971, thirteen months following Judge Grady's order pertaining to the Otis petition, more than two years following the second return of non est on the summons and more than five years after the date of the accident, the appellants filed their second petition for permission to sue the Board. This petition which alleged that the defendant Griffin could not be located for service of process was considered by Judge Harris on February 23, 1972. At that hearing, the Board stipulated that all of the requirements of section 7-621 had been met except for compliance with the provision requiring that all reasonable efforts be made to locate the whereabouts of Griffin so that personal service of process could be obtained. Judge Harris ruled that although he believed that the efforts to find Griffin, once undertaken, were reasonable, the fact that no efforts had been made to locate him until the latter part of 1970, more than four years after the accident, caused him to conclude that the petitioner had not exerted "all reasonable efforts" as required by section 7-621. We conclude that the trial judge did not abuse his discretion in reaching this conclusion and will, therefore, affirm the judgment.

In the recent case of *Cherry v. Unsat. C. & J. Fund Bd.*, 264 Md. 696, 288 A. 2d 136 (1972), we recognized that a determination of whether an applicant has satisfied the requirement of subsection 4 of section 7-621 that he "be required to show affirmatively, to the court's satis-

faction, that [all reasonable] efforts have been made"
to ascertain the defendant's whereabouts rests within
the sound judicial discretion of the trial judge.[2] But,
while this discretion is broad, we further concluded in
*Cherry* that it is not beyond appellate review to deter-
mine if there has been an abuse of that discretion.

Here, the appellee concedes that except for the delay
in undertaking efforts to find Griffin, once such efforts
were made, they were reasonable. But it urges that this
defect is fatal for as Judge Harris stated "reasonable
effort must also be timely." Thus, the narrow issue pre-
sented to us is whether the concept of time is a neces-
sary element of the activities required by the phrase "all
reasonable efforts have been made" and if so whether
the trial judge, who concluded that it was, abused his
discretion in finding that the delay here was unreason-
able. We think that time is an important factor and must
be considered. Even though in *Jones v. Unsat. C. & J.
Fund Bd.*, 261 Md. 62, 71, 273 A. 2d 418 (1971) we
stated: "We do not think that claimants before the Fund
ought to be subjected to the labors of Sisyphus in mea-
suring their attempts to exhaust all reasonable efforts
to identify and locate an illusive defendant" it was fur-
ther pointed out that "at a minimum vigorous good faith
efforts are required to identify the tortfeasor, the same
efforts one would expect an injured party to exert if he
knew there would be no recovery unless he actually lo-
cated the driver." It seems clear to us that all reasonable
efforts require that a claimant not only be vigorous as
to the investigative techniques by which he undertakes
to locate the owner or operator of a vehicle whose where-

---

2. The requirement that all reasonable effort be exerted to lo-
cate the whereabouts of a defendant is still mandated by the recent
enactment of Ch. 73, Laws of Maryland, 1972, now codified in the
Code (1957, 1972 Repl. Vol., 1972 Cum. Supp.) as Art. 48A, § 243H
(a)(2) (iv). However, the phrase requiring that these efforts be
"show[n] affirmatively, to the court's satisfaction" has been de-
leted. But we discern no lessening or other change caused by the
deletion of this phrase in the effort required to be shown. See
Cherry v. Unsat. C. & J. Fund Bd., 264 Md. 696, 288 A. 2d 136
(1972).

abouts are unknown but that it also be undertaken diligently while the trail is still reasonably fresh. As every hunter knows, the longer the time that has elapsed since the rabbit hopped along the bunny trail the less likely it is that the beagle hound can detect the scent and follow its path. Similarly, if a claimant has knowledge of facts that would lead a fair and prudent person, using ordinary thoughtfulness and care, to make inquiry and that person avoids making such inquiry for an inordinate length of time, he must suffer the consequences of his inaction. It is difficult to understand why anyone would allow nearly three years to pass without at least checking on the continued availability of the person he must obtain service of process against. This is particularly true in light of a recent report by the United States Census Bureau which indicates that on the average approximately 20% of the American population moves each year. But, assuming that the delay in attempting to contact Griffin between the date of the accident and the docketing of the suit nearly three years later was not unreasonable, certainly waiting six months from the time the appellants learned from the return of the summons non est that Griffin was missing before beginning to make a check as to his whereabouts is not acting with reasonable dispatch. This delay is sufficient for us to conclude that the trial court did not abuse its discretion in finding that all reasonable effort had not been exerted to locate Griffin. Here, the unreasonableness of the six months delay is accentuated by the fact that no effort was ever made to contact or check on Griffin's whereabouts during the nearly three years wait between the accident and the filing of the declaration. Additionally, the failure to obtain service of process created a condition which should have prompted reasonable inquiry, which we understand to mean an inquiry prosecuted with a degree of diligence adapted to the known circumstances. In short, we hold that, under this statute, an effort, in order to be reasonable, must be timely.

Appellants place great stress upon the fact that the

Board was not prejudiced by this delay arguing that even if they had attempted to seek out Griffin much earlier the investigative report shows they would have been unsuccessful. Even if this be true, appellants are not aided as the statute requires neither that the effort be successful nor that there be a showing that the Board was prejudiced. The requirement is only that all reasonable effort be made. *Hickman v. Unsatisfied C. & J. Fund,* 255 Md. 2C7, 257 A. 2d 426 (1969).

The circumstances presented in this case do not justify a conclusion that the trial court abused its statutory discretion by denying appellants' petition to sue the Board.

*Order affirmed. Costs to be paid by the appellants.*