# BROWN *v.* UNSATISFIED CLAIM AND JUDGMENT FUND BOARD

[No. 96, September Term, 1973.]

*Decided November 29, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*James E. Crawford* for appellant.

*B. Ford Davis,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston, Francis B. Burch, Attorney*

*General,* and *G. Raymond Valle, Assistant Attorney General,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This is an appeal from the denial of a petition for leave to sue the Unsatisfied Claim and Judgment Fund Board (the Board) for personal injuries and property damage sustained by appellant (the petitioner) in an automobile collision. The accident occurred during the afternoon of December 24, 1969, at the intersection of Paca and Saratoga Streets in the City of Baltimore, when the automobile owned and operated by the petitioner was struck from the rear by a "phantom" vehicle which immediately fled the scene. It is alleged in the petition that neither the operator nor the owner of that automobile has ever been identified.

The petitioner describes the accident and her resulting difficulty in identifying the car and the operator in these words:

> "A car ran into the back of me, and I turned around briefly, and then I felt faint, because it was a hard ram, but I did see the car spinning around, and he sped on up Paca. I tried to find a pencil, and I found one, and I got the license number — what I thought was the license number — and then several people came running to me, and they asked me was I hurt, and I told them, yes. And they asked, did I want them to get me an ambulance, and I said, yes. I tried to get out of the car because he had knocked me into the car that was in front of me, and I was going to go to see if everything was okay with him, because I realized — I tried to get out of the car, and I sat down, and he came to me, and told me not to worry about it, and had anyone called an ambulance, and there wasn't much damage to his car. And the police came, and the ambulance came, and they took my car and took me to the hospital."

She then testified that three persons at the scene also gave her what each thought was the license number of the

phantom car. She delivered the information along with a description of the driver and the vehicle to an officer from the traffic investigation section of the Baltimore City Police Department. One of the license tag numbers furnished by a witness matched the one which she had obtained. The police department dispatched a teletype message which carried this description furnished by the petitioner:

> " . . . a yellow station wagon operated by a white male, 35, sandy hair, wearing a brown shirt or sweater. Vehicle should be damaged on the left front and side; might have traces of blue paint on same. Request officer on check, BH 1483, listed on a 1967 Chevrolet station wagon. . . ."

The city police officer ascertained that, indeed, there was a 1968 Chevrolet station wagon bearing the tag number furnished by the petitioner, which was registered in the name of Edith Worthington Jenkins of Sunnybrook Road in Baltimore County. It was not only the same model automobile described in the teletype, but was of the same color. At the request of the city police officer, a member of the Baltimore County Police Department checked the Jenkins vehicle, and reported by teletype that it was not damaged. One of the unfortunate aspects of this case is that the record does not reflect when the Baltimore County "investigation" was conducted; nor does it indicate how thoroughly, if at all, the officer checked for recent repairs.

The city officer telephoned the Jenkins address and was advised by a man, who sounded as if he were "older" than 35, that at the time of the accident the car was " 'parked alongside of his house, and had not been removed from that location. At the time of the accident he said it was nowhere in Baltimore City.' "

In denying the petition, Judge Carter expressed the view that the petitioner should have filed suit against the owner of the tentatively identified vehicle, reasoning that if the jury exonerated her, that adjudication would have then opened the way to a valid suit against appellee.

The petition was filed pursuant to Maryland Code (1957,

1967 Repl. Vol.) Art. 66½, § 167 (a), which governed such proceedings on the date of this accident.[1] It provided, in relevant part, that permission for leave to sue the Board may be granted in cases where " . . . the identity of the motor vehicle and of the operator and owner thereof cannot be ascertained or it is established that the motor vehicle was, at the time said accident occurred, in the possession of some person other than the owner without the owner's consent and that the identity of such person cannot be ascertained. . . ." This remedy is subject to certain statutory conditions, one of which is that:

> "*All reasonable efforts* have been made to ascertain the identity of the motor vehicle and of the owner and operator thereof and either that the identity of the motor vehicle and the owner and operator thereof cannot be established, or that the identity of the operator, who was operating the motor vehicle without the owner's consent, cannot be established." Art. 66½, § 167 (f) (emphasis added).

In attacking the trial judge's ruling, the petitioner contends that she met the requirement of "all reasonable efforts" by obtaining the tag number and the description of the vehicle and driver — although dazed from the accident — and furnishing that information to the police officer; furthermore, that her task was completed by the subsequent investigations conducted by the police officers who reported their results to her. On the other hand, the Board maintains that given the identification obtained at the scene and the data provided by the two police departments, the petitioner failed to establish that the " . . . identity of the motor vehicle and of the operator and owner thereof [could not] be ascertained. . . ." We agree, and shall affirm the decision of the trial court.

We have considered the requirement of "all reasonable efforts" in several of our prior decisions. Three of them,

---

1. Although it is now designated as Code (1957, 1970 Repl. Vol.) Art. 66½, § 7-620, it remains substantially the same.

bear mentioning here. In *Hickman v. Unsatisfied C & J Fund*, 255 Md. 267, 257 A. 2d 426 (1969), we held that the claimant had made " . . . *no* identifying effort and [that] we cannot equate 'no' with 'all reasonable,' " 255 Md. at 270 (emphasis in original). There the record lacked any evidence of an attempt to comply with the requirements of the statute. Thus, we said that "[the statute] does not permit the injured person to be the judge of the need to investigate or of the probability of success." *Id.*

In *Grady v. Unsat. C. & J. Fund Bd.*, 259 Md. 501, 270 A. 2d 482 (1970), the claimant relied on what we there characterized as a "pro forma negative police report" which he had never seen; he even neglected to inquire whether the police had conducted an investigation. In affirming a denial of the petition, we noted that " '[r]easonable efforts' will differ according to the facts and circumstances of each case, and it is not a term which is easily defined or delineated. . . ." 259 Md. at 506.

In *Jones v. Unsat. C. & J. Fund Bd.*, 261 Md. 62, 273 A. 2d 418 (1971), however, we held that the injured person had met the statutory requirement of "all reasonable efforts," and could therefore sue the Board. There, the driver of the car which had seriously injured the claimant took him to a hospital emergency room, but disappeared without identifying himself or furnishing any information to the hospital authorities. The claimant reported the accident to the police sometime between one and three days later, explaining that he had not done so earlier because he was in great pain. In addition, his attorney interviewed hospital personnel and checked their records, and then inserted two advertisements in a local newspaper. Judge Digges, speaking for the Court, said:

> "We think it fair to say that, at a minimum, vigorous good faith efforts are required to identify the tortfeasor, *the same efforts one would expect an injured party to exert if he knew there would be no recovery unless he actually located the driver.* In ruling on investigative efforts the trial judge must exercise discriminating judgment, giving due

regard to such variable and interrelated factors as credibility, practicality, the law of diminishing returns, a sensible balancing of the anticipated amount of recovery against the cost of particular modes of inquiry, access to investigative resources, the fresh pursuit of promising clues, and, in the long run, the claimant's application of good common horse sense. . . ." 261 Md. at 76-77 (emphasis added).

The case at bar, however, is wholly distinguishable from these cases. Here a vehicle was actually located which bore the license tag number obtained by the petitioner and one other witness; moreover, it was the same model and color as the phantom automobile. At the very least, this was a tentative identification of the car and its owner. Furthermore, the address listed for the owner was not so distant that further investigation by the petitioner or her attorney would have been impractical. Although the police reported that the car had not been damaged, and that a man answering the telephone at the address of the owner provided an "alibi" for the automobile, we think the petitioner was required to do more to meet the statutory requirement.

Although we continue to avoid the adoption of a checklist in these cases, any number of steps might readily have been taken to either confirm or disprove the "alibi" relayed by the police. The trial judge ruled, correctly we think, that given the circumstances of this case, the petitioner should simply have sued the owner. As he observed, at the very minimum, this would have led to an adjudication that the Jenkins vehicle was the wrong one, *cf. Nicholson v. Unsat. C. & J. Fund Bd.*, 265 Md. 453, 290 A. 2d 384 (1972). In our view, this would have resulted in a compliance with the statutory requirement of "all reasonable efforts." *See Chocko v. Motor Vehicle Accident Indem. Corp.*, 20 App. Div. 2d 728, 248 N.Y.S.2d 170 (1964); *Ruiz v. Motor Vehicle Accident Indem. Corp.*, 19 App. Div. 2d 832, 244 N.Y.S.2d 594 (1963); *Simmons v. Raiola*, 36 Misc. 2d 555, 233 N.Y.S.2d 414 (1962).

We are not to be understood as engrafting upon § 167 (or §

7-620) an absolute requirement that the claimant must first sue anyone who might possibly be identified as the owner or operator of a phantom vehicle, *cf.* §§ 7-612, 7-613 and 7-615; nor, as we have intimated, do we hold that under similar circumstances, alternative efforts at compliance with the statute could not suffice.

In sum, we go no further than to hold that in the circumstances of this case, the petitioner failed to exercise "all reasonable efforts . . . to ascertain the identity of the motor vehicle and of the owner and operator thereof . . . ."

> *Order affirmed; appellant to pay costs.*