# NEUBERT *v.* MARYLAND AUTOMOBILE INSURANCE FUND

[No. 123, September Term, 1974.]

*Decided April 11, 1975.*

446

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and O'DONNELL, JJ.

*John L. Moring, Jr.,* with whom were *Goff & Moring* on the brief, for appellant.

*John J. Corbley,* with whom were *William F. Mosner, Thomas G. Bodie* and *Power & Mosner* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court.

We are here again confronted with determining whether a motorist, Jeri A. Neubert, the appellant, used "all reasonable efforts" to ascertain the identity of the owner and operator of a motor vehicle which allegedly caused her

to run off a public street and collide with a utility pole with resultant substantial bodily injuries and property damage. The appellee, Maryland Automobile Insurance Fund, the legal successor to the Unsatisfied Claim and Judgment Fund Board, "standing in the shoes" of the unidentified motorist alleged to have caused the harm, contended that all such "reasonable efforts" had not been pursued by Miss Neubert and prevailed in a hearing in the Circuit Court for Baltimore County (before Proctor, J.) upon Miss Neubert's petition to sue the Fund. Aggrieved at that result she urges a reversal.

Miss Neubert testified that at approximately 1 a.m. on April 9, 1973 she left her sister's apartment in Towson, where she had spent the evening, to return to her home located on Southway in Baltimore City; as she drove her Datsun automobile southward, in the lane adjacent to the center line of the York Road, at about 2:45 a.m. and as she was at "about 42nd Street" [1] she noticed a northbound vehicle described by her only as "a large white car" close to the center line and "coming toward her at an angle." [2] Travelling then at about 30 m.p.h. she accelerated to avoid the oncoming vehicle, pulled her steering wheel to the right and struck the pole. Although she had moments of unconsciousness as a result of her injuries, Miss Neubert, in her testimony, acknowledged that she had told an unidentified police sergeant who had come upon the scene immediately following the collision that "someone else was driving" when inquiry was made by him as to whether anyone else accompanied her. She classified this statement as "ridiculous" since she alone was driving the car and "had the steering wheel wrapped around her arm."

The appellant acknowledged that when interviewed at the Union Memorial Hospital where she was attended for her injuries she made no statement to the investigating police officer with regard to any other vehicle being involved in the incident.

---

1. Approximately ten blocks northward of her residence.

2. In the area where the southbound lanes of York Road narrow and the street continues southward as Greenmount Avenue.

When asked during her testimony what she had personally done to locate the unidentified owner or operator of the "large white car" Miss Neubert replied: "I didn't make any efforts, the only thing I know an ad was put in the paper for a week if anyone had seen the accident."

Placed in evidence in the hearing was a copy of an advertisement prepared by the appellant's attorney which was published on the back page of the Baltimore "Morning Sun" on both May 15 and 19, 1973, and which read:

"Anyone witnessing an accident which occurred on Monday, 4/9/'73 at 2 A.M. at York Rd. & 39th St. involving a '72 Datsun license LY 5510 and a large car please call . . . ."

The advertisement listed the name and telephone number of her former attorney.

Officer Wielechowski of the Baltimore City Police Department, who was summoned by his sergeant to take over the investigation, testified that he arrived at the scene at 2:50 a.m. and pinpointed the place of the collision as "in front of the premises known as 4324 York Road." [3] When he arrived Miss Neubert was being removed from her vehicle by an ambulance crew; there were several persons on the scene who had stopped to render her aid, but none of those persons present had actually witnessed the accident. The officer interviewed Miss Neubert in the examination room at the Union Memorial Hospital where she was being treated for her injuries about an hour or an hour and one-half later. He testified that she was extremely emotional, stated that she was "very tired" and "did not know how the accident occurred"; she made no statement to him then — or later — with regard to any other vehicle being involved in the incident.

Since the police were never notified of the existence of any other vehicle having been involved in the accident, or having caused it, no investigation was carried on by them to

---

**3.** Described as being opposite the property of the Arundel Lumber Company.

ascertain the identity of the motorist who purportedly precipitated Miss Neubert's plight. Upon the hearing of the petition to sue the sole evidence thus submitted in the trial court as to whether "reasonable efforts" had been taken by the appellant was the published advertisement.

Since the appellant's claim arose after January 1, 1973, her petition to sue came within the provisions of Maryland Code (1957, 1972 Repl. Vol., 1974 Cum. Supp.) Art. 48A, § 243H, which provides in pertinent part that a claim such as Miss Neubert's may be made against the Fund "where the identity of the motor vehicle and the operator and owner thereof cannot be ascertained." Art. 48A, § 243H (a) (1).[4] The remedy, however, is subject to certain statutory conditions, the one here involved providing that:

> "All reasonable efforts have been made to ascertain the identity of the motor vehicle and of the owner and operator thereof and either the identity of the motor vehicle and the owner and operator thereof cannot be established, or the identity of the operator who was operating the motor vehicle without the owner's consent cannot be established." Art. 48A, § 243H (a)(1)(iv).

A number of our prior decisions have considered the requirement of "all reasonable efforts" in cases involving the Unsatisfied Claim and Judgment Fund Board under the provisions of Code (1957, 1970 Repl. Vol.) Art. $66^{1}/_{2}$, § 7-620 (5), and its predecessor, Art. $66^{1}/_{2}$, § 167 (f).[5] Since the intent, as well as the language in the three statutes are, as to the conditions precedent, identical, we find them controlling.

In *Hickman v. Unsatisfied Claim and Judgment Fund Board*, 255 Md. 267, 257 A. 2d 426 (1969), Hickman testified that in his conversation with the investigating police officer

---

**4.** *See* Maryland Code (1957, 1972 Repl. Vol., 1974 Cum. Supp.) Art. 48A, § 243G.

**5.** *See* Code Art. 48A, § 243H (b), requiring compliance with Art. $66^{1}/_{2}$, § 7-620, as a condition precedent for a claim against the Fund pending promulgation of rules setting forth procedural requirements as to such claims under the new statute.

he made no reference to another car being involved in the accident and his counsel, having obtained the police report, which was void of information regarding the identity of the other vehicle, believing that any investigative efforts would have been fruitless, did not pursue the matter further, other than to accept Hickman's version that an unidentified vehicle had forced him to run off the road. After pointing out that "it would have been most natural for him to have immediately vented his resentment at one who had injured him," in discussing the case with the police officer, Chief Judge Hammond, for the Court, stated:

> "It [(the statute)] does not permit the injured person to be the judge of the need to investigate or of the probability of success. The statute does not grant the right to sue in a 'hit and run' case to one who, when faced with the need to seek the facts, becomes fainthearted or completely indolent. At the least, it cannot be assumed that *if the investigating officer had been told of the other car at the time of the accident or later,* relevant information would not have resulted. Admittedly here the appellant made *no* identifying effort and we cannot equate 'no' with 'all reasonable.'" (Emphasis supplied.) 255 Md. at 270, 257 A. 2d at 428.

In *Grady v. Unsat. C. & J. Fund Bd.*, 259 Md. 501, 270 A. 2d 482 (1970), Grady was a passenger in an automobile which allegedly was forced off the road by an oncoming "phantom motor vehicle." A State Policeman summoned to the scene there conducted an investigation to ascertain the identity of any witnesses. None of those questioned at the scene could supply the trooper with any information and his report so stated. Grady contended that since the State Trooper had made "reasonable efforts" in his investigation, which were unsuccessful, to require him to do anything after a nonproductive police investigation would be a "subservience to technicality."

In finding that Grady had made no "reasonable efforts" to

identify the "phantom motorist," Judge Finan, for the Court, stated: "In our opinion, to allow Grady to equate 'reasonable efforts,' as required by the statute, with a pro forma negative police report about which he had made no inquiry and with which he was unfamiliar until the day of the hearing some three months after the accident, would be playing fast and loose with the intent of the statute." 259 Md. at 505-06, 270 A. 2d at 484.

After pointing out from Grady's testimony that he had "never talked to any police officer about this accident," and citing the holdings in *Hickman, supra,* he continued for the Court:

> " 'Reasonable efforts' will differ according to the facts and circumstances of each case, and it is not a term which is easily defined or delineated. Whether it would have been reasonable under the circumstances of this case to require the appellant to place an advertisement in a newspaper in an effort to locate potential witnesses or to personally interview the residents of the homes in the area need not be decided here. [Footnote omitted.] At the very least, reasonable efforts in the case at bar *would require the appellant to communicate with the State Police to determine whether or not they had even conducted any investigation, and that was not done.* In view of the fact that the appellant failed to take even this initial step, we need not decide whether he should have gone further. As in *Hickman,* we are not prepared to accept a total absence of any action by the claimant as 'reasonable efforts.' " 259 Md. at 506-07, 270 A. 2d at 485.

We decided, however, in *Jones v. Unsat. C. & J. Fund Bd.,* 261 Md. 62, 273 A. 2d 418 (1971), that the petitioner had complied with the statutory requirement of making "all reasonable efforts" and was entitled to sue the Board. In *Jones* the driver of a blue Oldsmobile Cutlass ran over him on Independence Day while he was taking an afternoon nap

on the grass, about 15-20 feet off the roadway in Druid Hill Park. Although the driver took him to a hospital for emergency treatment he disappeared without identifying himself or furnishing any information to the hospital authorities. Jones reported the incident to the police "sometime between one and three days after the accident," and attributed his inaction to his "great pain." His attorney interviewed hospital personnel, checked the hospital records and then caused to be published in the Afro-American newspaper two advertisements seeking the identity of anyone who "saw [a] car hit man on grass in Druid Hill Park July 4, 1969."

Judge Digges, who wrote the opinion for the Court, after quoting with approval from Annot., *Uninsured Motorist Fund — Recovery* 7 A.L.R.3d 851, 854 (1966), as an "accurate estimate of the presently articulated case law" and after observing that in *Grady, supra,* "it was suggested that newspaper advertisements or a door to door canvass of the few homes in the immediate vicinity of the accident would have constituted at least some phase of a reasonable investigation," stated:

> "The [police] report that was taken offered no help at all, except to make it clear that it would be unreasonable to expect the police to assist in a metropolitan-wide hunt for a blue Oldsmobile Cutlass. Jones' most logical and promising point of inquiry was to find a witness either at the hospital or among the members of the black community who frequented Druid Hill Park. His attorney, who was contacted promptly, went to work on these clues immediately, inquiring at the hospital and placing two ads in the black community newspaper. *Compare, Serkes v. Parsekian, supra,* 179 A. 2d at 786-87." 261 Md. at 77, 273 A. 2d at 426.

Concluding that "both the appellant and his attorney may well have been convinced of the improbability of success, but in spite of this they have made, in our opinion, 'all reasonable efforts' to find a needle in a haystack," Judge

Digges for the Court, set forth a test of "reasonableness" in such cases when he said:

"We think it fair to say that, at a minimum, vigorous good faith efforts are required to identify the tortfeasor, *the same efforts one would expect an injured party to exert if he knew there would be no recovery unless he actually located the driver.* In ruling on investigative efforts the trial judge must exercise discriminating judgment, giving due regard to such variable and interrelated factors as credibility, practicality, the law of diminishing returns, a sensible balancing of the anticipated amount of recovery against the cost of particular modes of inquiry, access to investigative resources, the fresh pursuit of promising clues, and, in the long run, the claimant's application of good common horse sense." (Emphasis supplied.) 261 Md. at 76-77, 273 A. 2d at 425.

In *Jones* the Court noted, however, that the annotation, 7 A.L.R.3d 851, *supra,* "uses a much more certain tone in advising attorneys on practice pointers" when making such a claim, and quoted it with approval as follows:

" 'The lawyer whose client expects to file a claim against an unsatisfied claim and judgment fund because of injuries caused by an unidentified motorist *should be sure, before the claim is filed, that sufficient efforts have been made to identify the driver.* Conclusory allegations that due and diligent efforts have been made to identify him may be insufficient.

'The lawyer should pursue any information which may lead to identifying the driver. Reporting the accident to the police is a common method of attempting to identify the driver, and a police report indicating that the driver can not be identified may be of considerable weight in establishing the claimant's due diligence, provided the police were notified *promptly* after the

accident. Newspaper advertisements are another judicially recognized exercise of diligence to identify a driver, if they are placed immediately after the accident. The use of private investigators is also advisable in some cases. Of course, the failure to identify a motorist after diligent efforts is often not alone sufficient to maintain a suit against the fund if the motor vehicle itself or its owner can be identified.' 7 A.L.R.3d 855-56" (Emphasis supplied.) 261 Md. at 74, 273 A. 2d at 424.

Again, in *Johnson v. Unsat. C. & J. Fund Bd.*, 262 Md. 90, 277 A. 2d 5 (1971), the petitioners were passengers on a bus northbound on Maryland Route 3 when it was struck by a car headed south in the northbound lane. The errant vehicle had departed the scene before its license number could be obtained, although it was apparently pursued by another motorist. When a police officer arrived at the scene and obtained a description of the car which had collided with the bus he broadcast an "all points" alert for the vehicle over the police radio.

Judge Singley, for the Court, in upholding the rights of the petitioners to sue the Board, stated:

"The case before us is wholly unlike *Grady* and *Hickman*, where inactivity was the order of the day, and more comparable to *Jones*, where efforts were made, but without success. Here, there was an abundance of witnesses who saw the collision. The police were at the scene within minutes of the accident. The alert which was broadcast was an effort far beyond the claimants' capabilities. There was nothing further that they could do, and no subsequent follow-up would have helped. In the context of the Act, there were no other 'reasonable efforts' which they could have undertaken to establish 'the identity of the motor vehicle and the owner and operator thereof.' " 262 Md. at 94, 277 A. 2d at 7-8.

Most recently the question of the "reasonableness" of the claimant's efforts to identify a "phantom vehicle" came before this Court in *Brown v. Unsat. C. & J. Fund Bd.*, 270 Md. 377, 311 A. 2d 773 (1973). In that case the claimant's vehicle was allegedly struck from the rear at the intersection of Paca and Saratoga Streets in Baltimore City by a "phantom" vehicle which immediately fled the scene. The claimant wrote down what she "thought" was the license number and testified that three persons at the scene also gave her what each thought to be the license number of the vehicle. One of the license tag numbers furnished her by a witness matched the one which she had obtained. This information, together with a description of the driver and the phantom vehicle, was turned over to investigating police. A teletype message was dispatched carrying the following description as furnished by the petitioner:

" ' . . . a yellow station wagon operated by a white male, 35, sandy hair, wearing a brown shirt or sweater. Vehicle should be damaged on the left front and side; might have traces of blue paint on same. Request officer on check, BH 1483, listed on a 1967 Chevrolet station wagon. . . .' "

Investigation disclosed that a 1968 Chevrolet station wagon bearing the tag number furnished by the petitioner was registered to a Baltimore County resident (Jenkins); it was the same model and the same color as described in the teletype. A police officer, ostensibly making an investigation by telephone, phoned the County address and was advised by a male, "who sounded as if he were 'older' than 35," that at the time of the accident the car was " ' "parked alongside of his house, and had not been removed from that location," ' " and further reported that "at the time of the accident the vehicle was nowhere in Baltimore City." A Baltimore County police officer checked the vehicle and by teletype reported that it was not damaged.

In agreeing with the trial court that all "reasonable efforts" had not been pursued by the claimant, Judge

Levine, for the Court, after reviewing our earlier holdings, stated:

> "Although we continue to avoid the adoption of a check-list in these cases, any number of steps might readily have been taken to either confirm or disprove the 'alibi' relayed by the police. The trial judge ruled, correctly we think, that given the circumstances of this case, the petitioner should simply have sued the owner. As he observed, at the very minimum, this would have led to an adjudication that the Jenkins vehicle was the wrong one, *cf. Nicholson v. Unsat. C. & J. Fund Bd.*, 265 Md. 453, 290 A. 2d 384 (1972). In our view, this would have resulted in a compliance with the statutory requirement of 'all reasonable efforts.' *See Chocko v. Motor Vehicle Accident Indem. Corp.*, 20 App. Div. 2d 728, 248 N.Y.S.2d 170 (1964); *Ruiz v. Motor Vehicle Accident Indem. Corp.*, 19 App. Div. 2d 832, 244 N.Y.S.2d 594 (1963); *Simmons v. Raiola*, 36 Misc. 2d 555, 233 N.Y.S.2d 414 (1962).
>
> We are not to be understood as engrafting upon § 167 (or § 7-620) an absolute requirement that the claimant must first sue anyone who might possibly be identified as the owner or operator of a phantom vehicle, cf. §§ 7-612, 7-613 and 7-615; nor, as we have intimated, do we hold that under similar circumstances, alternative efforts at compliance with the statute could not suffice." 270 Md. at 382-83, 311 A. 2d at 776.

It is clear from our decisions that what are "reasonable efforts" will differ "according to the facts and circumstances in each case, and it is not a term which is easily defined or delineated." *See Grady, supra*, 259 Md. at 506, 270 A. 2d at 485. Each case has been decided on its own facts, and has been "evaluated against an unarticulated general standard that has been evolving on a case by case basis." *See Jones, supra*, 261 Md. at 72-73, 273 A. 2d at 423. Although, as pointed out in *Brown, supra*, we have continued "to avoid

the adoption of a check-list in these cases," "at a minimum, vigorous good faith efforts are required to identify the tortfeasor, the same efforts one would expect an injured party to exert if he knew there would be no recovery unless he actually located the driver." *See Jones, supra,* 261 Md. at 76, 273 A. 2d at 425.

Our holdings in *Hickman, supra,* and in *Grady, supra,* seem here particularly apposite insofar as they relate to the efforts personally made by Miss Neubert to identify the "phantom vehicle." Like the claimant in *Hickman,* she never told the investigating officer when interviewed by him that any other vehicle had caused her accident, nor did she, subsequent to that interview, ever report such fact to the police. As we noted in *Hickman,* "if the investigating officer had been told of the other car at the time of the accident" relevant information might have resulted from such disclosure. At the very least, reasonable efforts in the case would have required the appellant to communicate with the Baltimore City Police to determine whether or not they had ever conducted any investigation to ascertain the identity of the errant motorist. *See Grady, supra,* 259 Md. at 507, 270 A. 2d at 485.

Nor does it appear that her attorney even minimally relied on a "negative police report" as was done in *Grady,* since the advertisement caused to be published by her attorney factually does not coincide with either the time of the happening of the accident nor its locale, as set forth in the police report.

Concededly, no attempts were made, as suggested in *Grady,* and in *Jones,* to attempt by door to door canvass to interview the residents of the 4300 block of York Road to ascertain if any of them might personally be able to supply even a clue in identifying the fugitive motorist.

Although in *Jones,* a more precise newspaper advertisement had been used in an attempt to locate witnesses who may have been in Druid Hill Park at the time Jones was run over by the unidentified motorist, his "reasonable efforts" were based additionally on the fact that his attorney went to work immediately on the clues, visited

the hospital to which the motorist had taken Jones, interviewed the personnel who were then on duty and checked its records. In this case nothing was apparently done other than the publication of an inaccurate newspaper advertisement.

When Judge Proctor denied the appellant leave to sue he pointed out that the subject accident occurred in the 4300 block of the York Road, that the advertisement made reference to an accident some four blocks away, at York Road and 39th Street, and that anyone who may have witnessed the accident in which the appellant had been involved certainly would not construe the advertisement as a solicitation to come forth with information about her accident.

Assuming, without deciding, that an accurate newspaper advertisement, when considered with all the other facts and circumstances in the case, might, in a proper case, supply evidence of such "reasonable efforts" to identify the alleged tortfeasor, we do not think that the advertisement here used by appellant's attorney, directing potential witnesses to a busy east-west intersection, at Greenmount Avenue and 39th Street, at least four blocks distant, and purporting to have occurred 45 minutes before Miss Neubert's untoward incident, resulted in any "reasonable effort" to ascertain the identity of the motor vehicle, or of the owner and operator thereof which allegedly caused her to collide with the utility pole.[6]

We agree, under the test laid down in *Jones, supra,* that in ruling on the claimant's investigative effort, the trial judge used discriminating judgment, giving due regard to such variable and interrelated factors as the modes of inquiry invoked, access to investigative resources, the fresh pursuit of any promising clues and the claimant's application "of good common horse sense."

As pointed out in *Jones, supra,* although "we do not think

---

**6.** By analogy, *see* Code, Art. 66½, § 7-606 (a), requiring that a claimant upon giving notice to the Fund "shall describe the manner in which the accident occurred, *specifying the time and place of occurrence . . . ."* (Emphasis supplied.)

that the claimants before the Fund ought to be subjected to the labors of Sisyphus in measuring their attempts to exhaust all reasonable efforts to identify and locate an elusive defendant," we conclude on the facts here that the petitioner's inefficacious efforts did not constitute any effort, much less establish "all reasonable efforts," as a condition precedent to making a claim upon a Fund preserved for claimants who have exhausted all other sources of recovery.

> *Order of the Circuit Court for Baltimore County affirmed; appellant to pay costs.*