ESPOSITO, ETC. ET AL. *v.* MARYLAND
AUTOMOBILE INSURANCE FUND

[No. 165, September Term, 1974.]

*Decided May 12, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE and O'DONNELL, JJ.

*Joseph L. Johnson,* with whom were *Samuel D. Hill* and *White, Mindel, Clarke & Hill* and *Forrest R. Gabler* on the brief, for appellants.

*William E. Brannan,* with whom were *Robert J. Ryan* and *Moore, Hennegan, Brannan & Carney* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

In order to qualify to sue the Maryland Automobile Insurance Fund a claimant must comply with the requirements set forth in what is now codified as Maryland Code (1957, 1972 Repl. Vol., 1974 Cum. Supp.) Art. 48A, § 243H.[1] One such requisite is that the individual who desires to sue the fund must demonstrate that he has made "all reasonable efforts" to ascertain the identity of the vehicle, its owner and its operator, which he asserts caused the accident. This statutory condition is found in section 243H (a) (1)(iv), and reads:

> "All reasonable efforts have been made to ascertain the identity of the motor vehicle and of the owner and operator thereof and either the identity of the motor vehicle and the owner and operator thereof cannot be established, or the identity of the operator who was operating the motor vehicle without the owner's consent cannot be established."

What "all reasonable efforts" entails has been the tempest's origin in a number of this Court's previous decisions, *Neubert v. Maryland Auto. Ins. Fund,* 274 Md. 445, 337 A. 2d 59 (1975); *Brown v. Unsat. C. & J. Fund Bd.,* 270 Md. 377, 311 A. 2d 773 (1973); *Johnson v. Unsat. C. & J.*

---

1. At the time pertinent here this provision, using the same language, was codified as Maryland Code (1957, 1970 Repl. Vol.) Art. 66½, § 7-620 (5).

*Fund Bd.*, 262 Md. 90, 277 A. 2d 5 (1971); *Jones v. Unsat. C. & J. Fund Bd.*, 261 Md. 62, 273 A. 2d 418 (1971); *Grady v. Unsat. C. & J. Fund Bd.*, 259 Md. 501, 270 A. 2d 482 (1970); *Hickman v. Unsatisfied C. & J. Fund*, 255 Md. 267, 257 A. 2d 426 (1969),[2] and is also the issue here. Although we have recognized that what constitutes " '[r]easonable efforts' will differ according to the facts and circumstances of each case, and it is not a term which is easily defined or delineated," *Grady v. Unsat. C. & J. Fund Bd.*, *supra* at 506, we have also realized that based upon a case-by-case development "the semblance of a rule has commenced to emerge," *Johnson v. Unsat. C. & J. Fund Bd.*, *supra* at 91. Frequently quoted as a general guideline in assessing "reasonable efforts" is that language of *Jones v. Unsat. C. & J. Fund Bd.*, *supra* which states:

> "We think it fair to say that, at a minimum, vigorous good faith efforts are required to identify the tortfeasor, *the same efforts one would expect an injured party to exert if he knew there would be no recovery unless he actually located the driver.* In ruling on investigative efforts the trial judge must exercise discriminating judgment, giving due regard to such variable and interrelated factors as credibility, practicality, the law of diminishing returns, a sensible balancing of the anticipated amount of recovery against the cost of particular modes of inquiry, access to investigative resources, the fresh pursuit of promising clues, and, in the long run, the claimant's application of good common horse sense." *Id.* at 76-77 (emphasis added).

With this general framework in mind we now scrutinize the efforts exerted in the instant case by the appellant,

---

2. These cases were brought under the present statute, Code (1957, 1972 Repl. Vol., 1974 Cum. Supp.) Art. 48A, § 243H, or one of its predecessors — Code (1957, 1970 Repl. Vol.) Art. 66½, § 7-620 (5) or Code (1957) Art. 66½, § 167 (f). Each of these statutes has the same "all reasonable efforts" requirement.

Frank J. Esposito, Jr.,[3] so as to determine whether the trial judge, Kenneth C. Proctor, correctly denied the appellant leave to sue the fund because of his failure to make "all reasonable efforts" to locate the phantom vehicle.

The events which led up to the present posture of this case are, in a word, tragic. At approximately 2:00 a.m. on December 11, 1972, Frank, Jr., then 13 years of age, was sitting quietly as a passenger in an automobile driven by his father on the Baltimore Beltway near the Milford Mill Road underpass. Suddenly, the vehicle veered to the right and traveled off the roadway nearly 116 feet along the shoulder or berm before colliding sideways into the guardrail with such an impact that it caromed another 24 feet before coming to a rest. At least part of the reason the automobile came to a halt where it did is that a portion of the guardrail pierced through the body of the Esposito vehicle and not only impaled and killed Frank's father but also completely severed one of the boy's legs and left the other one dangling only by some strands of muscle tissue. Although Frank, Jr. was rushed by ambulance to a nearby hospital soon after the accident, the police were unable to notify his mother, then divorced from his father, until later in the morning.

That same day, after regaining her composure to some extent, Frank's mother telephoned her ex-husband's attorney, Robert S. Rody, to inform him of the unfortunate occurrence and to request that he provide any legal assistance that might be necessary. However, it was not until Mrs. Esposito called Mr. Rody back two or three days later — apprising him of Frank's "broken record" utterances to her while he was in the hospital shock trauma unit to the effect that the Esposito vehicle was run off the road — that the attorney contacted the police, mentioned the phantom vehicle hit-and-run possibility, and asked for a further accident investigation. In response to Rody's request the police made an additional inquiry. The final police report concluded that there had been no other vehicle involved in

---

**3.** Frank, Jr. is joined in this suit by his mother, Mrs. Rose Marie Esposito, as well as by the estate of his father, Frank J. Esposito, Sr.

the Esposito accident and consequently gave no direct information as to the identity of a phantom, if there indeed had been one. In addition to requesting this police investigation, Rody testified that he personally visited the scene of the accident hoping to find nearby residents who witnessed the calamity, talked with the man who towed the vehicle from the beltway, studied the police report and pictures, and, though for one reason or another was unable to gain access to his young client, went to the hospital to interview Frank, Jr. After these efforts were expended by Rody, none of which bore fruit, the investigation came to a standstill. For a several month interim no further efforts were exerted until a new attorney was obtained by Mrs. Esposito to represent Frank, Jr. (Rody, however, continued to represent the estate of Frank, Sr.). The new counsel proffered to the court that he resumed the search for the phantom vehicle largely through the efforts of a private investigator who tried, but to no avail, to find information or clues as to the identity of the phantom by interviewing several of the investigating police officers, talking with the man who serviced the Esposito automobile before the accident and inspected it afterwards, and inquiring to determine if Frank's father had any enemies who may have desired to harm him by forcing his car off the road. If the investigator or this new attorney did any more it. went unstated.

This is the sum total of what the record indicates was done in an effort to locate the phantom vehicle, its owner and its driver. From this it is now necessary to determine, without the use of "20-20 hindsight," whether there were expended in this case "the same efforts one would expect an injured party to exert if he knew there would be no recovery unless he actually located the driver." *Jones v. Unsat. C. & J. Fund Bd.*, *supra* at 76. We agree with Judge Proctor that they were not.

Although the appellant here did somewhat more than did the claimants in *Grady*, *supra* (reliance on a "pro forma negative police report") and *Hickman*, *supra* (reliance on police investigation without informing them of contention

that accident was caused by phantom vehicle), we do not believe that the search for the alleged phantom, conducted on Frank Jr.'s behalf, was so exhaustive, complete and timely [4] as to approximate the intense inquiry an injured individual would reasonably make to find the elusive tort-feasor after suffering a great, legally recoverable loss with no way to collect damages except by uncovering the identity and whereabouts of the negligent party. In arriving at this determination the basic query applied to the efforts made in this case is whether a motorist who sustains substantial injuries when hit by another automobile, the identity of which remains a mystery, would be reasonable in ceasing, to a substantial degree, to look for the vehicle largely because the police stopped their search, at what might be characterized as a relatively early stage in their inquiry, *after concluding that no second automobile was involved in the accident*? The question answers itself — realizing that the police did not believe that another vehicle was involved in the accident, much less caused it, an effort to check on and probe any leads the police failed to uncover or those they did find but did not thoroughly pursue, would be called for on the part of the claimant until he reached a deadend.[5]

In this case, we believe that there were access roads to potential highways of information which it appears the appellant failed to recognize and explore because he made no mention of them at the hearing before Judge Proctor. There is no evidence that the claimant or his agents extensively interrogated all the policemen who had any direct or indirect involvement in the investigation of the accident, or if he did what factual details, rather than conclusions, were

---

4. Although the new attorney tried to rescue the investigation, many of his efforts must be viewed as tardy in light of the fact that it is imperative in hit-and-run cases to delve into any clues promptly after the accident. See Diamond v. Unsat. C. & J. Fund Bd., 268 Md. 260, 300 A. 2d 215 (1973).

5. If the police believed that there may have been a phantom and then accordingly made exhaustive efforts to locate him, it would probably be placing form over substance for the claimant to be required to do again what the police had already thoroughly pursued without success. Johnson v. Unsat. C. & J. Fund Bd., 262 Md. 90, 277 A. 2d 5 (1971). Compare, Grady v. Unsat. C. & J. Fund Bd., 259 Md. 501, 270 A. 2d 482 (1970).

discovered; that he inquired how the police learned about the accident, whether by chance upon routine patrol, or from information given by a telephone caller, perhaps a witness or even the phantom himself, who might have given his name to the police desk clerk; that he interviewed the rescue or ambulance crew who came to the accident so as to delve into such things as their memories of the accident victim's conscious or unconscious mumblings; or that he visited the hospital and attempted to glean from the staff any information they may have absorbed. Furthermore, not only does it appear that these efforts were not made, but the appellant has not attempted to justify their absence by showing them to be analogous to the futile rock-pushing of Sisyphus as referred to in *Jones, supra*; in fact such activities, because they have, we think, a reasonable potential of leading either to the discovery of the phantom or to be the uncovering of additional clues to be further pursued, are essentially required of this claimant before he can be deemed to have complied with the "all reasonable efforts" statutory precondition to obtaining permission to sue the Maryland Automobile Insurance Fund.

In any event, we determine that this question is one of fact to be decided by the trial judge and thus once he has reached his factual conclusion it may not be interfered with on appeal unless shown to be clearly erroneous; on the record in this case, we do not find Judge Proctor to have been clearly in error when he determined that the appellant had not exhausted all reasonable efforts to learn the identity of the phantom vehicle. Maryland Rule 886.

*Order of the Circuit Court for Baltimore County affirmed.*
*Costs to be paid by appellant.*