528 A.2d 912

**Ark Kee LEE and Oliva Lee**

v.

**Marlene C. WHEELER et al.**

**Misc. No. 25, Sept. Term, 1986.**

Court of Appeals of Maryland.

July 31, 1987.

Thomas A. Gentile (Harry W. Goldberg and Harry W. Goldberg, P.A., on the brief), Chevy Chase, for appellant.

Richard L. Fritts (Joseph Patrick Clancy and Clancy & Pfeifer, on the brief), Chevy Chase, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and JAMES F. COUCH, Jr. (retired) Specially Assigned.

ADKINS, Judge.

In *State Farm v. Md. Auto. Ins. Fund*, 277 Md. 602, 605, 356 A.2d 560, 562 (1976), we held that an insurance policy that limited uninsured motorist coverage "to instances of physical impact between the insured and the phantom vehicle plainly violates the legislative mandate of [Md.Code, Art. 48A] § 541(c) and is void." *State Farm* concerned an accident that occurred in Maryland. The issue now before us is whether the result should be different when the accident occurs outside Maryland. The specific question, put to us by the United States Court of Appeals for the District of Columbia Circuit pursuant to the Maryland Uniform Certification of Questions of Law Act, Code (1973, 1984 Repl.Vol.) Courts and Judicial Proceedings Art. §§ 12–601 through 12–609, is:

Under an automobile insurance policy covering Maryland insureds, is a provision in that policy requiring physical contact between the insureds' vehicle and the phantom vehicle lawful and enforceable under Maryland law where the accident occurs outside the State of Maryland?

The federal court has concisely summarized the facts giving rise to the dispute now before us:

On April 27, 1980, [appellants] Ark and Oliva Lee, residents of the State of Maryland, were driving their

[Maryland-registered] car in the District of Columbia. As they proceeded, a vehicle operated by [appellee] Marlene Wheeler swerved to avoid an unidentified vehicle that suddenly entered her traffic lane. In so doing, Ms. Wheeler struck the Lees' vehicle head-on. Both the Lees sustained serious physical injuries.

The Lees subsequently filed suit against Wheeler in the United States District Court for the District of Columbia.... The Lees also joined their insurer, [appellee] Pennsylvania General Insurance Company (Pennsylvania General), seeking coverage under the policy's uninsured motorist provisions for the damages sustained as a result of the phantom's negligence.

*Lee v. Wheeler,* 810 F.2d 303, 304 (D.C.Cir.1987).

The Lees recovered against Wheeler, but their claim against Pennsylvania General was dismissed because its insurance policy contained a provision that required physical contact with the phantom vehicle in order for the uninsured motorist provisions to apply, a provision the trial court held valid under District of Columbia law, which it found applicable. On appeal by the Lees, the United States Court of Appeals concluded that Maryland law, not District of Columbia law, was applicable. 810 F.2d at 304–305. But it was unsure whether this Court would follow the holding of *State Farm* and strike down an insurance policy provision requiring impact with a phantom vehicle when the accident occurs outside of Maryland; hence the certification. For reasons we shall now explain, we hold that the principle stated for the Court by Chief Judge Murphy in *State Farm* applies here. Accordingly, we hold that uninsured motorist coverage provided to a Maryland insured may not be limited to situations in which there is actual contact between the insured vehicle and a phantom vehicle, when the accident occurs outside the State of Maryland. The answer to the certified question, therefore, is "no." [1]

---

1. Pennsylvania General among other things argues that its exclusion of non-impact phantom vehicle claims should be held to be enforce-

Our analysis begins with a review of our decision in *State Farm v. Md. Auto Ins. Fund, supra.* There the Maryland Automobile Insurance Fund (MAIF) sought a declaration that an insurance policy endorsement, requiring physical contact between an insured's vehicle and a phantom vehicle as a prerequisite to coverage, violated the uninsured motorist provision of Md.Code (1957, 1986 Repl.Vol.) [2] Art. 48A, § 541(c). Section 541(c)(2) provides

In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article, for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle. There shall be available to the insured the opportunity to contract for higher amounts than those provided under Title 17 of the Transportation Article if these amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy. The coverage required under this subsection (c) shall be in such form and subject to such conditions as may be approved by the Commissioner of Insurance.... In no case shall the uninsured motorist coverage be less than the coverage

able as to claims that exceed the statutory mandatory minimum coverage required by Maryland law. *See State Farm Mut. v. Nationwide Mut.,* 302 Md. 631, 516 A.2d 586 (1986). Because that point is not encompassed within the certified question, we decline to address it. For the same reason, we likewise express no opinion on the issue raised by amici in this case: whether Maryland law prohibits a physical contact requirement in uninsured motorist coverage in commercial policies as opposed to personal policies.

2. Because the relevant provisions of Art. 48A have not materially changed since our 1976 decision in *State Farm,* our references are to the provisions as they stood prior to 1 July 1987. *See* Md.Code, (1957, 1986 Repl.Vol.) §§ 541, 243H, 243I and 243L(e).

afforded a qualified person under Article 48A, §§ 243H and 243–I....

As earlier noted, after examining the uninsured motorist provisions in light of the remedial design of Art. 48A, we held that a "limitation of coverage to instances of physical impact between the insured and the phantom vehicle plainly violates the legislative mandate of § 541(c) and is void." 277 Md. at 605, 356 A.2d at 562. We reasoned that § 541(c) mandates that "[i]n no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A, §§ 243H and 243–I." [3]

Section 243H(a)(1) allows claims against MAIF for injuries caused by phantom vehicles by authorizing in pertinent part,

> Claims for the death of or personal injury to a qualified person or for damage to property in excess of $100, arising out of the ownership, maintenance or use of a motor vehicle in this State where the identity of the motor vehicle and of the operator and owner thereof cannot be ascertained....

In *State Farm* we observed that § 243H makes no distinction between impact and non-impact phantom drivers and authorizes claims against MAIF in either circumstance. An automobile policy that limits coverage only to impact phantom accidents provides less coverage than § 243H and is, therefore, unlawful.

Pennsylvania General does not encourage us to abandon our holding in *State Farm*. Rather, it argues that its non-impact phantom vehicle exclusion is enforceable under Maryland law, because the accident in this case, unlike that

---

**3.** Section 243L(e) provides that a qualified person within the meaning of the uninsured motorist provisions is

a resident of this State or the owner of a motor vehicle registered in this State or a resident of another state, territory, or federal district of the United States or province of the Dominion of Canada, or foreign country, in which recourse is afforded to residents of this State, of substantially similar character to that provided for by this subtitle....

in *State Farm,* occurred outside the State. ˙That is so, the argument runs, because § 541(c) contains an implied territorial limitation when read in harmony with § 243H(a)(1), which authorizes qualified persons to present claims against MAIF for personal injuries "arising out of the ownership, maintenance or use of a motor vehicle *in this State* ... [emphasis supplied]."

According to Pennsylvania General, the phrase "in this State" unambiguously creates a geographic restriction on the applicability of the uninsured motorist provision of § 541(c); therefore, the scope of the coverage under its endorsement is not less than § 243H, but in fact identical since MAIF under § 243H, again according to Pennsylvania General, provides no coverage for accidents occurring outside the State of Maryland. We find this argument unpersuasive.

Section 541(a) of Art. 48A commands that every motor vehicle liability policy issued in Maryland contain uninsured motorist coverage. In *Pennsylvania Nat'l Mut. v. Gartelman,* 288 Md. 151, 157, 416 A.2d 734, 737 (1980), we explained that "[t]he primary purpose of this requirement is to assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists." Indeed, the enactment of § 541 and the related uninsured motorist provisions of Art. 48A reflect a substantial, legislatively-mandated change in "the public policy of this State with regard to motor vehicle insurance and reparations for damages caused by motor vehicle accidents." *Jennings v. Government Employees,* 302 Md. 352, 357, 488 A.2d 166, 168 (1985). Cognizant of this change, we have consistently invalidated "conditions or limitations in an uninsured motorist endorsement, which provide less than the coverage required by the statute...." *Nationwide Mutual Ins. v. Webb,* 291 Md. 721, 730, 436 A.2d 465, 471 (1981) (invalidating "consent to sue" clause); *see also Jennings, supra,* 302 Md. at 358–359, 488 A.2d at 169 (invalidating household exclusion); *Reese v. State Farm Mut. Auto Ins.,* 285 Md.

548, 555, 403 A.2d 1229, 1233 (1979) (invalidating policy requirement that insured must secure a judgment against tortfeasor before seeking to enforce insurance contract against the insurer).

■ A corollary principle in our construction of Art. 48A is that we will not imply exclusions nor recognize exclusions beyond those expressly enumerated by the legislature. *See e.g., Jennings, supra,* 302 Md. at 359, 488 A.2d at 169–170; *Gartelman, supra,* 288 Md. at 160–161, 416 A.2d at 739; *Parsons v. Erie Insurance Group,* 569 F.Supp. 572, 578 (D.Md.1983). Section 541(c)(2)(i) and (ii) do authorize two express exclusions from mandatory minimum uninsured motorist coverage. No territorial exclusion or limitation, however, is evident. Indeed, § 541(c) states succinctly that it requires insurers to provide coverage for damages "which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance or use of such uninsured motor vehicle."

Despite all this, as we have seen, Pennsylvania General insists that § 243H(a)(1) authorizes an exclusion for phantom vehicle non-impact claims when the accident occurs outside Maryland. But the language on which Pennsylvania General relies, and which we have quoted *supra,* does not deal with mandatory motor vehicle liability insurance. It deals with claims against MAIF. Indeed, the language pre-dates the provisions of § 541, having been first enacted (although not in identical form) as § 145E(a) of former Art. 66½ of the Code by ch. 836, Acts of 1957, establishing the former Unsatisfied Claim and Judgment Fund. The original language provided:

> "Any qualified person, who suffers damages resulting from bodily injury or death or damage to property arising out of the ownership, maintenance or use of a motor vehicle in this state on or after the first day of June 1959 and whose damages may be satisfied in whole or in part from the fund ... shall ... give notice ... of his intention to make a claim...."

The Unsatisfied Claim and Judgment Fund was, of course, intended to give some protection to the innocent victims of motor vehicle accidents, *Allied American Co. v. Comm'r*, 219 Md. 607, 150 A.2d 421 (1958), and this Court has long recognized that MAIF is the legal successor to that statute. *See Nationwide Mut. Ins. v. Webb*, 291 Md. 721, 726 n. 3, 436 A.2d 465, 468–469 (1981) ("In addition to its function as an insurance company, MAIF succeeded the Unsatisfied Claim and Judgment Fund in its role of protecting innocent persons injured by uninsured or improperly insured motorists ..."); *Neubert v. Md. Auto. Ins. Fund*, 274 Md. 445, 337 A.2d 59 (1975); *see also* Comment, *Compensation for Victims of Uninsured Motorists Accidents*, 12 U.Balt.L.Rev. 314, 316 n. 7 (1983) ("In 1972 Maryland amended its Unsatisfied Claim and Judgment Fund, changing the fund's name to Maryland Automobile Insurance Fund (MAIF) and giving it the added function of insuring drivers unable to obtain private insurance").

There is, therefore, a functional continuity of purpose in the present MAIF provisions that militate against reading § 243H as in any way qualifying § 541(c)(2). To be sure, there is harmony in the legislative design of Art. 48A, which seeks to provide minimum compensation to the innocent victims of motor vehicle accidents. The provision for compulsory automobile insurance, plus the creation of MAIF as a liability insurer of last resort, demonstrate the dramatic change in State policy with respect to protection of the public from the economic harm produced by automobile accidents. That change in policy was recognized in *Jennings* and other cases, *Maryland Auto Ins. Fund v. Sun Cab Co.*, 305 Md. 807, 506 A.2d 641 (1986); *National Grange Mut. Ins. v. Pinkney*, 284 Md. 694, 399 A.2d 877 (1979), and reinforces the principle that only expressly-authorized exclusions will be recognized by this Court.

The expanded protection produced by what is now § 541 and its related provisions suggests, therefore, that § 541 and § 243H, although related, have different functions. Our cases are instructive on the interaction between them.

In *Reese v. State Farm Mut. Auto. Ins., supra,* 285 Md. 548, 403 A.2d 1229 (1979), we invalidated an uninsured motorist endorsement that required an insured to bring an action against an uninsured motorist, in that instance a phantom, as a condition precedent to suing the insurer for recovery under the uninsured motorist provision. We examined § 541(c) and noted it contained no requirement that an insured sue or obtain a judgment against an uninsured motorist before pursuing a remedy against the insurer. We also examined § 243H(a)(2)(iii), which expressly requires in certain circumstances that an insured institute a cause of action against the negligent driver before asserting a claim against MAIF. We concluded

> If the General Assembly had also wanted a claimant to institute a cause of action against the uninsured motorist in order to recover from his insurer under § 541(c), presumably it would have spelled out such a requirement.

285 Md. at 555, 403 A.2d at 1233.

Similarly, in *Gartelman, supra,* 288 Md. 157, 416 A.2d 734 (1980), the claimant, insured under her spouse's policy, was injured while riding an uninsured moped owned by the spouse when a phantom truck forced her off the road. The insurer denied coverage under an uninsured motorist endorsement that excluded claimants operating uninsured motor vehicles owned by an insured other than himself. We noted that § 541(c) contained no such exclusion and examined § 243H(a)(1)(i) which disallows claims against MAIF where an insured is injured while riding an uninsured vehicle owned by him. We reasoned that the purpose behind the exclusion, which is to encourage owners to insure their vehicles, is not promoted by denying coverage to other insureds who cannot obtain insurance for vehicles they do not own. 288 Md. at 159–160, 416 A.2d at 738–739. We invalidated the endorsement, concluding that to read § 243H(a)(1)(i) broadly to encompass non-owner insureds would create an exclusion not expressly provided for and defeat the remedial design of Art. 48A.

In *Jennings, supra,* 302 Md. 352, 488 A.2d 166 (1985), we invalidated a household exclusion contained in an uninsured motorist endorsement, reasoning that the expressly enumerated exclusions of § 541(c)(2) did not authorize the endorsement. In *Nationwide Mutual Ins. Co. v. Miller,* 305 Md. 614, 620, 505 A.2d 1338, 1341 (1986), we explained that the only permissible exclusions from mandatory uninsured motorist coverage are those "specifically authorized by statute." To insert exclusions by implication or recognize exclusions not expressly prohibited by the statute has the dangerous potential of seriously frustrating the policies behind compulsory automobile liability insurance. *Jennings,* 302 Md. at 360, 488 A.2d at 170.

We have consistently adhered to these principles of construction in interpreting related provisions of Art. 48A. For example, in *DeJarnette v. Federal Kemper Ins. Co.,* 299 Md. 708, 475 A.2d 454 (1984), we held that insurers may exclude personal injury protection (PIP) benefits to persons injured while using a motorcycle. PIP coverage in motor vehicle liability policies is mandated by Art. 48A, § 539, as uninsured motorist coverage is mandated by § 541(c). We reasoned, however, that the legislature provided specific statutory exclusions from the mandated PIP coverage in § 545. Subsection (d), now (b), of that provision authorized an exclusion for motorcycles with the following language:

> With respect to motorcycles, economic loss benefits required under § 539 may be excluded, or may be offered with deductibles, options or with specific exclusions.

Md.Code (1957, 1986 Repl.Vol.) Art. 48A § 545(b). We concluded that this express statutory exclusion authorized insurers to exclude motorcycles from PIP coverage. 299 Md. at 724–725, 475 A.2d at 462–463.

These cases teach that § 541(c) and § 243H do not always operate to qualify or supplement each other. In light of this, § 541(c)'s statement that uninsured motorist coverage shall "[i]n no case ... be less than the coverage afforded a qualified person under ... § 243H ..." cannot be taken as authorizing an otherwise unpermitted unin-

sured motorist exclusion when an automobile accident occurs outside of Maryland.  This would fly in the face of the broadly-protective public policy our cases have identified.  The quoted language of § 541(c) may establish a floor below which an insurer may not go, but it does not establish a ceiling.  Absent specific language in § 541 or some other portion of the compulsory insurance law, we decline to recognize an exclusion that effectively renders Maryland residents uninsured once they cross the State line.[4]  By so doing we safeguard the integrity of the uninsured motorist law and promote its remedial purpose of compensating the innocent victims of motor vehicle accidents.

Pennsylvania's exclusion from uninsured motorist coverage when there is no contact between the phantom vehicle and the insured vehicle is unenforceable as against public policy whether the accident takes place within or without the State of Maryland.

CERTIFIED QUESTION ANSWERED AS ABOVE SET FORTH.  COSTS TO BE PAID ONE–HALF BY APPELLANTS AND ONE–HALF BY APPELLEES.

---

**4.**  In our discussion of § 243H(a)(1) we have assumed, *arguendo*, that it does include a residential requirement with respect to claims against MAIF.  That is the way Pennsylvania General reads the law, but we reject Pennsylvania General's conclusion even if the law be read that way.  We note, however, that this reading of the statute is not inevitable.  We expressly do not decide whether it is correct.