589 A.2d 944

Robin FORBES, as Father and Next Friend of George Forbes and Connie Forbes, Minors,

v.

HARLEYSVILLE MUTUAL INSURANCE COMPANY.

No. 23, Sept. Term, 1989.

Court of Appeals of Maryland.

May 10, 1991.

690

Gerard P. Uehlinger, Baltimore, for petitioner.

Malik J. Tuma, David D. Patton, Baltimore, on brief, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY and McAULIFFE, JJ., and HARRY A. COLE,* WILLIAM H. ADKINS and BLACKWELL,** Associate Judges of the Court of Appeals (retired).

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Adkins, J., and Blackwell, J., now retired, participated in the hearing and conference of this case while active members of this Court but did not participate in the decision and adoption of this opinion.

ELDRIDGE, Judge.

The first issue in this case is whether the statutorily mandated uninsured motorist coverage in automobile liability insurance policies includes coverage for wrongful death claims. The second issue concerns the insured status of the deceased and the effect of that status on coverage for the wrongful death claims.

## I.

Carol and Robin Forbes were married and had two children, George and Connie. Prior to August 4, 1984, the four resided in the home of Robin Forbes's mother in Baltimore City. On August 4, 1984, Carol Forbes left her mother-in-law's home and, along with Delbert Dean, moved into an apartment in Easton, Maryland, under a month-to-month lease. On or about August 27, 1984, Carol Forbes removed Connie and George from Baltimore to the Easton apartment. Robin Forbes did not consent to the removal of the children. In addition, the uncontradicted evidence before the trial court was that Carol Forbes at no time asked for or discussed with Robin Forbes a divorce. Carol Forbes did not change her voter registration to Easton and did not notify the Motor Vehicle Administration of any change in her address.

On September 22, 1984, Carol Forbes was killed in an accident while riding as a passenger in Delbert Dean's uninsured motor vehicle. Connie and George Forbes were also passengers and were injured in the accident. The accident was caused by the negligence of Dean, the uninsured driver.

Robin Forbes, as spouse of Carol Forbes and as next friend of George and Connie Forbes, filed an action in the Circuit Court for Anne Arundel County against his uninsured motorist carrier, Harleysville Mutual Insurance Com-

pany, and against Delbert Dean, the tortfeasor.[1] Counts one and two of the complaint, as amended, sought damages on behalf of Connie and George Forbes for the personal injuries which they had received in the accident. In counts three, four, and five, claims were made on behalf of Connie, George and Robin Forbes respectively for the wrongful death of Carol Forbes.

Dean fled the jurisdiction and has never been located. An order of default was entered against Dean on all five counts.

Harleysville filed a motion for summary judgment, and, after a hearing, the circuit court denied the motion as to counts one and two requesting damages for the personal injuries to the children. With regard to counts three, four and five, however, summary judgment was granted in favor of Harleysville. The circuit court held that wrongful death damages could not be recovered by Robin Forbes and the children under the uninsured motorist coverage because, at the time of the wrongful death, Carol Forbes had moved out of Robin Forbes's home and, therefore, was not an "insured" under the policy. On June 28, 1988, the circuit court entered judgment on counts one and two against Delbert Dean and Harleysville, and on counts three, four and five solely against Dean.[2]

---

1. Harleysville had issued an automobile liability policy on a 1979 Chevrolet station wagon which was titled jointly in Robin and Carol Forbes's names. Both Robin Forbes and Carol Forbes were expressly listed on the declaration page of the policy as the operators of the vehicle. Only Robin Forbes was designated as "named insured."

2. Harleysville has satisfied the judgment with respect to counts one and two of the plaintiff's complaint. There is an indication in the record that a portion of the judgment against Dean may have been satisfied out of Dean's assets found in Maryland. Apparently the Maryland Automobile Insurance Fund has made some payments pursuant to Maryland Code (1957, 1991 Repl.Vol.), Art. 48A, §§ 243H–243J.

Robin Forbes, individually and on behalf of the children and the subrogee Maryland Automobile Insurance Fund, filed a notice of appeal to the Court of Special Appeals. While Forbes's appeal was pending in that court, the Court of Special Appeals filed its opinion in *Globe American Casualty v. Chung,* 76 Md.App. 524, 547 A.2d 654 (1988), *vacated,* 322 Md. 713, 589 A.2d 956 (1991), in which the Court of Special Appeals took the position that the statutorily required uninsured motorist coverage in automobile insurance policies does not include wrongful death claims. In reaching this result, the Court of Special Appeals relied upon the language of the insurance policy involved in that case, and upon the language of Maryland Code (1957, 1991 Repl.Vol.), Art. 48A, § 541(c)(2), which refers to "damages which the *insured* is entitled to recover from the owner or operator of an uninsured vehicle because of *bodily injuries* sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle." (Emphasis added). The use of the phrase "bodily injuries" without any reference to "death," and the use of the word "insured" without any reference to "the surviving next-of-kin," led the Court of Special Appeals to conclude that wrongful death claims were not encompassed by the statutorily mandated uninsured motorist coverage. *Globe American Casualty v. Chung, supra,* 76 Md.App. at 541, 547 A.2d at 662.

After the Court of Special Appeals filed its opinion in the *Chung* case, but before the present case was briefed and argued in the Court of Special Appeals, the plaintiff-appellant Robin Forbes filed in this Court a petition for a writ of certiorari. The petition presented the following two questions:

1. "Does the uninsured motorist statute require coverage for wrongful death claims, contrary to the Court of Special Appeals' holding in *Globe American Casualty v. Boo Hyun Chung, Pers. Rep.?* "

2. "Is an uninsured motorist insurance carrier responsible to pay a judgment in favor of minor children for the wrongful death of their mother, where the mother was

married to but not living with the father at the time she was killed by the negligent uninsured driver?" [3]

This Court granted the petition, and we shall reverse that portion of the judgment in favor of Harleysville concerning the wrongful death claims on behalf of the children.

## II.

The first issue is whether the uninsured motorist coverage required by statute extends to damages arising from a wrongful death caused by the negligence of an uninsured motorist.

The General Assembly has enacted a comprehensive insurance scheme, with numerous mandatory coverages, for motor vehicles required to be registered in Maryland and for motor vehicle insurance policies issued in Maryland. *See* Code (1977, 1987 Repl.Vol., 1990 Cum.Supp.) §§ 17–101 through 17–110 of the Transportation Article; Code (1957, 1991 Repl.Vol.), Art. 48A, §§ 234B, 240AA through 242, 243 through 243L, and 538 through 547. *See, e.g., Nationwide v. USF & G,* 314 Md. 131, 133–136, 550 A.2d 69, 70–71 (1988); *Lee v. Wheeler,* 310 Md. 233, 528 A.2d 912 (1987); *Jennings v. Government Employees Ins.,* 302 Md. 352, 357, 488 A.2d 166, 168–169 (1985). As part of this comprehensive scheme, Art. 48A, § 541(c), requires that "every policy of motor vehicle liability insurance issued, sold, or delivered in this State" contain uninsured motorist coverage "in at least the amounts required under Title 17 of the Transportation Article...." [4]

---

**3.** In his certiorari petition and in his brief, the plaintiff-appellant did not contest that portion of the judgment in favor of Harleysville with respect to the wrongful death claim on behalf of Robin Forbes. That claim resulted in a judgment against Dean for only $500.00. The portions of the judgment against Dean representing the wrongful death claims on behalf of the two children, however, were $200,000.00 and $78,000.00 respectively.

**4.** The minimum amounts of coverage required by Title 17 of the Transportation Article are $20,000 for one person, and $40,000 for each occurrence. *See* § 17–103(b)(1).

 In taking the position that the uninsured motorist coverage required by Art. 48A, § 541(c), does not encompass wrongful death claims, the Court of Special Appeals in *Globe American Casualty Company v. Chung, supra,* and Harleysville in the instant case, seized upon certain words in one sentence of § 541(c)(2), without regard to the legislative purpose reflected in § 541(c) and without regard to the other language in the section.[5] Nevertheless, in construing

5. Art. 48A, § 541, provides in relevant part as follows:

"(c) *'Uninsured motor vehicle' defined; uninsured motorist coverage; limit of insurer's liability.*—(1) In this subsection 'uninsured motor vehicle' means a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury or death of an insured, and for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to the bodily injury or death is less than the amount of coverage provided to the insured under this subsection.

"(2) In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article, for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle. There shall be offered in writing to the insured the opportunity to contract for higher amounts than those provided under Title 17 of the Transportation Article if these amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy. The coverage required under this subsection (c) shall be in such form and subject to such conditions as may be approved by the Commissioner of Insurance. Any provision in any policy of motor vehicle liability insurance issued after July 1, 1975, with respect to the coverage provided for damages sustained by the insured as a result of the operation of an uninsured motor vehicle, which commands or requires the submission of any dispute between the insured and the insurer to binding arbitration, is prohibited and shall be of no legal force or effect. In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A, §§ 243H and 243–I. However, the insurer may exclude from coverage benefits for:

"(i) The named insured or members of his family residing in the household when occupying, or struck as a pedestrian by, an uninsured motor vehicle that is owned by the named insured or a member of his immediate family residing in his household; and

"(ii) The named insured, members of his family residing in the household, and all other persons having other applicable automo-

statutes in order to ascertain the legislature's intent, we do not read particular language in isolation or out of context. We construe statutory language in light of the legislature's general purpose and in the context of the statute as a whole. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513–516, 525 A.2d 628, 632–633 (1987). *See Jones v. State*, 311 Md. 398, 405, 535 A.2d 471, 474–475 (1988).

■ Our cases have emphasized that the uninsured motorist statute "embodies a public policy 'to assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists.'" *Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 169, 582 A.2d 501, 503 (1990), *quoting Pennsylvania Nat'l. Mut. v. Gartelman*, 288 Md. 151, 157, 416 A.2d 734, 737 (1980). *See Lee v. Wheeler, supra*, 310 Md. at 238, 528 A.2d at 915. Also, we have consistently stated that "the purpose of uninsured motorist statutes is 'that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility Law.'" *Nationwide Mut. Ins. Co. v. Webb*, 291 Md. 721, 737, 436 A.2d 465, 474 (1981), *quoting Webb v. State Farm*

bile insurance and occupying, or struck as a pedestrian by, the insured motor vehicle operated or used by a person excluded from coverage under § 240C–1 of this article. The coverage required under this subsection shall be primary to any right to recovery from the Maryland Automobile Insurance Fund pursuant to § 243H of this article.

"(3) The limit of liability for an insurer providing uninsured motorist coverage under this subsection is the amount of that coverage less the sum of the limits under the liability insurance policies, bonds, and securities applicable to the bodily injury or death of the insured.

\* \* \* \* \* \*

"(f) *Uninsured motorist coverage in policies providing coverage in excess of other insurance.*—Policies of insurance that have as their primary purpose to provide coverage in excess of other valid and collectible insurance or qualified self insurance may include uninsured motorist coverage as provided in subsection (c) of this section."

*Mutual Automobile Ins. Co.,* 479 S.W.2d 148, 152 (Mo.App. 1972). *See Hoffman v. United Services Auto. Ass'n,* 309 Md. 167, 172, 522 A.2d 1320, 1322 (1987). *See also Lee v. Wheeler, supra,* 310 Md. at 237, 528 A.2d at 914. Moreover, we have said that " 'the remedial nature' of the uninsured motorist statute 'dictates a liberal construction in order to effectuate its purpose....' " *Nationwide Mut. Ins. Co. v. Webb, supra,* 291 Md. at 737, 436 A.2d at 475, *quoting State Farm Mut. Ins. Co. v. Maryland Auto. Ins. Fund,* 277 Md. 602, 605, 356 A.2d 560, 562 (1976). Finally, limitations on coverage or exclusions in insurance policies, which are inconsistent with the purpose of the uninsured motorist statutory provisions, are unenforceable. *See, e.g., Nationwide v. USF & G, supra,* 314 Md. at 135, 141, 550 A.2d at 71, 74; *Gable v. Colonial Ins. Co.,* 313 Md. 701, 703–704, 548 A.2d 135, 136 (1988); *Lee v. Wheeler, supra,* 310 Md. 233, 528 A.2d 912; *Nationwide Mut. Ins. Co. v. Webb, supra,* 291 Md. at 730, 436 A.2d at 471; *Pennsylvania Nat'l. Mut. v. Gartelman, supra,* 288 Md. 151, 416 A.2d 734; *Reese v. State Farm Mut. Auto. Ins. Co.,* 285 Md. 548, 554–556, 403 A.2d 1229, 1233–1234 (1979).

■■■■ The liability coverage in standard automobile insurance policies, and the liability coverage mandated by Maryland financial responsibility law, encompass wrongful death claims. *See Daley v. United Services,* 312 Md. 550, 541 A.2d 632 (1988); Code (1977, 1987 Repl.Vol., 1990 Cum. Supp.), § 17–103(b) of the Transportation Article ("The security required under this subtitle shall provide for at least: (1) The payment of claims for bodily injury *or death* arising from an accident ...") (emphasis added). As pointed out above, the purpose of the required uninsured motorist coverage is to make available the same coverage as would have been available had the tortfeasor complied with the liability insurance requirements of the financial responsibility law. Since the liability insurance required by the financial responsibility law includes wrongful death claims, it follows that the uninsured motorist coverage also includes wrongful death claims.

The language of the uninsured motorist statutory provision, Art. 48A, § 541(c), confirms that the General Assembly contemplated coverage for wrongful death claims. Although the sentence in paragraph (2) of § 541(c) relied on by the Court of Special Appeals and by Harleysville refers only to "bodily injuries sustained in an accident," paragraph (1) of § 541(c), defining the term "uninsured motor vehicle," refers to "bodily injury or death of an insured." Paragraph (1) also refers to the "liability under ... liability insurance policies ... applicable to the bodily injury or death." In addition, paragraph (3) of § 541(c) measures the liability limit of the uninsured motorist carrier as "the amount of that [uninsured motorist] coverage less the sum of the limits under the liability insurance policies ... applicable to the bodily injury or death of the insured." This obviously reflects the General Assembly's contemplation that uninsured motorist coverage, to the same extent as liability coverage, is "applicable to the ... death of the insured" and, like liability coverage, embraces wrongful death claims.

Moreover, § 541(c)(2) states that "[i]n no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A, §§ 243H and 243–I." These sections relate to claims not covered by insurance and payable by the Maryland Automobile Insurance Fund as successor to the Unsatisfied Claim and Judgment Fund. *See Nationwide Mut. Ins. Co. v. Webb, supra,* 291 Md. at 726 n. 3, 436 A.2d at 468–469 n. 3; *State Farm Mut. Ins. Co. v. Maryland Auto. Ins. Fund, supra,* 277 Md. at 603 n. 1, 356 A.2d at 561 n. 1. We have held that, under this provision of § 541(c)(2), uninsured motorist coverage must be as broad as the coverage under §§ 243H and 243–I; limitations on coverage which are not contemplated by §§ 243H and 243–I are not allowed under § 241(c). *State Farm v. Maryland Auto. Ins. Fund, supra,* 277 Md. at 605–606, 356 A.2d at 562. *See Lee v. Wheeler, supra,* 310 Md. at 236–237, 528 A.2d at 914. Section 243H states that "[c]laims for the *death* of or personal injury to a

qualified person" will be covered, and § 243-I sets the maximum amount payable for the injury or death of any one person at $20,000 (emphasis added). This Court has taken the position that §§ 243H and 243-I encompass wrongful death claims. *Unsatisfied Claim & Judgment Fund v. Hamilton*, 256 Md. 56, 259 A.2d 303 (1969). Consequently, as the uninsured motorist coverage under § 541(c) must be as broad as the coverage under §§ 243H and 243-I, and as §§ 243H and 243-I include wrongful death claims, the conclusion is inescapable that § 541(c) also includes wrongful death claims.

In recent years this Court has dealt with the uninsured motorist coverage required by § 541(c) in a multitude of opinions. The General Assembly has amended § 541(c) on numerous occasions. Neither the opinions of this Court nor the actions of the General Assembly, including the underlying legislative history, have even intimated that wrongful death claims might not be embraced within § 541(c). On the contrary, we have, although without any discussion of the issue, treated wrongful death claims as covered by § 541(c). *See Hoffman v. United Services Auto. Ass'n, supra,* 309 Md. 167, 522 A.2d 1320; *Yarmuth v. Gov't Employees Ins. Co.,* 286 Md. 256, 407 A.2d 315 (1979). Furthermore, the cases throughout the country which have considered the issue have held that wrongful death claims are within uninsured motorist coverage. *See, e.g., Williams v. Williams,* 23 Ariz.App. 191, 531 P.2d 924 (1975); *Zeagler v. Commercial Union Ins. Co.,* 166 So.2d 616 (Fla.App.1964), *cert. dismissed,* 172 So.2d 450 (Fla. 1965); *Pearthree v. Hartford Acc. & Indem. Co.,* 373 So.2d 267, 271 (Miss.1979); *Ashcraft v. Ashcraft,* 689 S.W.2d 693, 695 (Mo.App.1985); *Sterns v. M.F.A. Mutual Insurance Company,* 401 S.W.2d 510 (Mo.App.1966); *Satzinger v. Satzinger,* 156 N.J.Super. 215, 383 A.2d 753 (1978); *Wood v. Shepard,* 38 Ohio St.3d 86, 89–90, 526 N.E.2d 1089, 1092 (1988); *In re Estate of Reeck,* 21 Ohio St.3d 126, 488 N.E.2d 195 (1986); *Brummett v. Grange Ins. Assoc.,* 4 Wash.App. 979, 485 P.2d 88 (1971).

We hold, therefore, that Art. 48A, § 541(c), encompasses wrongful death claims.

## III.

Harleysville next argues that if wrongful death claims are covered by Art. 48A, § 541(c), there nevertheless can be no recovery in this case because of Carol Forbes's status at the time of the accident resulting in her death. Harleysville contends that under the language of the insurance policy issued on Robin and Carol Forbes's station wagon, uninsured motorist benefits are payable only if the person sustaining bodily injury or death in an accident was an "insured" at the time of the accident. While conceding that the two children were "insureds" within the meaning of the policy, Harleysville maintains that Carol Forbes was not an "insured" at that time. According to the insurance company, she was not an "insured" because she was not designated as a "named insured" in the policy and did not reside in the household of the named insured. Therefore, the argument continues, the language of the insurance policy precludes the recovery of uninsured motorist benefits on behalf of the insured children.[6]

---

**6.** Even though Harleysville concedes that the minor children were "insureds" at the time of the accident, we note that the authorities support the view that in cases of minor children whose parents are divorced or separated, the children remain residents of the household of the parent listed as the named insured on the policy. Some courts have held that the children can be residents of both parents' households for purposes of insurance. *See, e.g., Wainscott v. Ossenkop,* 633 P.2d 237 (Alaska 1981); *Krause v. Mutual Service Cas. Co.,* 399 N.W.2d 597, 601–602 (Minn.App.1987); *Countryside Cas. Co. v. McCormick,* 722 S.W.2d 655 (Mo.App.1987); *Allstate Ins. Co. v. Luna,* 36 A.D.2d 622, 623, 319 N.Y.S.2d 139, 141 (1971); *Great American Ins. Co. v. Allstate Ins.,* 78 N.C.App. 653, 656, 338 S.E.2d 145, 147, *review denied,* 316 N.C. 552, 344 S.E.2d 7 (1986) ("resident" of household should be broadly construed so as to include all who, by any reasonable construction, may be included within the coverage of an insurance policy); *Davis v. Maryland Cas. Co.,* 76 N.C.App. 102, 106, 331 S.E.2d 744, 747 (1985); *Snedegar v. Midwestern Indem. Co.,* 44 Ohio App.3d 64, 67–69, 541 N.E.2d 90, 94–96 (1988); *Hartford Casualty Ins. Co. v. Phillips,* 575 S.W.2d 62 (Tex.Civ.App.1978).

Harleysville recognizes that if the insurance policy contains a limitation on coverage which is inconsistent with Art. 48A, § 541(c), such limitation is unenforceable. Harleysville asserts, however, that § 541(c) does not require the payment of wrongful death benefits to the insured children if their parent, who was killed by the negligence of an uninsured motorist, was not an "insured" when the accident occurred. It is also Harleysville's position that nothing in the statutory language requires that Carol Forbes be deemed an "insured" under the Harleysville policy.

While not accepting Harleysville's interpretation of the insurance policy, the thrust of petitioner Robin Forbes's argument is that the statutory provisions require coverage of the claims on behalf of the children regardless of Carol Forbes's status under the language of the policy.

We disagree with Harleysville's constructions of both the insurance policy and the statute. In our view, under the particular circumstances of this case, Carol Forbes was an "insured" or "covered person" at the time of the accident. Alternatively, even if she were not deemed an "insured" under the policy, Art. 48A, § 541(c), as applied to the fact situation here, requires that the children's wrongful death claims be covered by the uninsured motorist provisions of the policy.

(a)

█ Preliminarily, a strong argument could be made that Carol Forbes was a "named insured" for purposes of uninsured motorist coverage regardless of the definitions in the insurance policy. Art. 48A, § 538, containing the definitions for the required motor vehicle insurance coverage subtitle of the Maryland Insurance Code, defines a "named insured" in subsection (c) as "the person denominated in the declarations in a policy of motor vehicle liability insurance." Section 538(c) does not require that the person be denominated "as a 'named insured' " or specifically designated as such. As previously noted, both Robin and Carol Forbes were co-owners of the insured vehicle, were both designated

in the policy as the two operators, and both names were listed on the declaration page of the policy. Only Robin Forbes, however, was expressly designated as "named insured." Harleysville acknowledged in the circuit court that, in the situation where the husband and wife were co-owners and co-operators of the insured vehicle, the insurance premium would have been the same regardless of whether both spouses or one spouse was designated as "named insured." Harleysville further stated that sometimes its policies designated both spouses as named insureds and sometimes only one; the insurer indicated that there was no particular reason for the difference in designations. Under these circumstances, it could be persuasively argued that Carol Forbes was a "named insured" under the definition in Art. 48A, § 538(c). Nonetheless, for purposes of this case, we shall assume that Carol Forbes was not a "named insured."

■ The endorsement to the Harleysville insurance policy relating to uninsured motorist coverage states:

"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:

1. Bodily injury sustained by a covered person and caused by an accident...."

The uninsured motorist endorsement contained its own section of definitions. The definition of "covered person" was as follows:

" 'Covered person' as used in this endorsement means:

1. You [the named insured] or any family member.

2. Any other person occupying your covered auto.

3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1 or 2 above."

The term "family member," although used in several provisions set forth in the uninsured motorist endorsement, is not further defined or limited in the definition section or

elsewhere in the endorsement. The definition section at the beginning of the main policy, however, defines the term as follows:

> " 'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."

The parties have proceeded upon the assumption that this general definition of "family member" is applicable to the uninsured motorist endorsement, and we shall do likewise.

Therefore, the critical issue under the language of the insurance policy is whether Robin Forbes's wife, who was co-owner and co-operator of the insured vehicle, was "a resident of [Robin Forbes's] household" at the time of the accident. Harleysville's position seems to be that whenever one spouse stops physically residing in the household where both spouses have resided, and begins physically residing at another place, that spouse is no longer "a resident" of the other spouse's household for purposes of being covered under the family car policy, regardless of how temporary the separation may be and regardless of the reason for it.

Married couples often may experience marital difficulties which result in one of the spouses leaving the home for a period of time. The employment situations of spouses may require them to maintain separate households in different areas for varying lengths of time. It would be an unreasonable construction of the "household residence" language in automobile insurance policies, as well as similar language in the Maryland Insurance Code,[7] to hold that during every such period of separation, no matter how brief, the spouse who leaves the marital home automatically becomes uninsured with regard to the family car. It would be a particularly unreasonable construction where the spouse leaving the household is co-owner and co-operator of the family

---

7. *See, e.g.,* Art. 48A, §§ 539(b)(1)(i), 539(f)(1)(iii), 539(f)(2)(iv), 541(c)(2)(i), 541(c)(2)(ii), 545(c).

car.[8] Even though her car is covered by a policy containing the mandatory insurance coverages, such spouse would not be a "covered person."

Adoption of Harleysville's theory would result in the creation of a large class of uninsureds who obtained such status simply by leaving the residence of the named insured, even for a temporary period. This would be inconsistent with Maryland's public policy of mandatory motor vehicle insurance coverage. *See, e.g., Larimore v. American Ins. Co.*, 314 Md. 617, 625, 552 A.2d 889, 892 (1989) ("To uphold the ... exclusion in motor vehicle insurance policies could result in a large class of ... uninsured motorists"); *Jennings v. Government Employees Ins., supra,* 302 Md. at 360, 488 A.2d at 170.

It is almost certain that the intent of Carol and Robin Forbes in obtaining the Harleysville policy on the family station wagon was that both of them as co-owners and co-operators would be insured with respect to their vehicle. Acceptance of Harleysville's theory would frustrate this intent. Moreover, under Harleysville's construction of the policy, whenever a married couple in the position of Carol and Robin Forbes separated, even temporarily, one of them would have to obtain a second policy on the family car if he or she were going to be fully insured with regard to the vehicle. It is highly unlikely that the parties intended this when contracting for the insurance policy on the station wagon.

Many courts, including this Court, have considered whether a spouse who has left the family home is still a "resident of the same household" for purposes of motor vehicle insurance. It is generally stated that residence under " '[a] common roof is not the controlling element.' It is rather a conclusion based on the aggregate details of the living

---

**8.** Each spouse who is co-owner of the motor vehicle has an equal right to use it. *Neale v. Wright,* 322 Md. 8, 19–21, 585 A.2d 196, 201–202 (1991); *Nationwide Mut. Ins. Co. v. Stroh,* 314 Md. 176, 182–183, 550 A.2d 373, 375–376 (1988).

arrangements of the parties." *Davenport v. Aetna Casualty & Surety Co.,* 144 Ga.App. 474, 475, 241 S.E.2d 593, 594 (1978); *Aetna Life & Casualty Co. v. Carrera,* 577 A.2d 980, 985 (R.I.1990).

This Court considered the issue in *American Casualty Co. v. Walzl,* 238 Md. 322, 208 A.2d 597 (1965). In that case the husband, Wallace Baker, had procured insurance, as the named insured, on two automobiles both of which were titled in his wife's name. The Bakers had a stormy marriage and occasionally separated for short periods. The separation at issue began on May 26, 1962. On June 26, 1962, Mrs. Baker filed a complaint for a divorce *a mensa et thoro,* and her husband filed a cross-complaint for the same relief. On July 2, 1962, while riding as a passenger in one of the Bakers' automobiles which was being driven by a friend's husband, Frank Walzl, Mrs. Baker was injured in an accident. She sued Walzl and his insurer, and the insurer in turn filed a declaratory judgment action against the Bakers' liability insurer, American Casualty, claiming that American Casualty had primary coverage. American Casualty refused coverage on the ground that Mrs. Baker was not a resident of Mr. Baker's household at the time of the accident. The trial court held that Mrs. Baker was a resident of her husband's household, and this Court affirmed, stating that

"temporary absences are quite frequent in a normal household due to emergencies or other reasons, and if narrow interpretations were applied, then there would be no coverage during these temporary separations.... Where marital difficulties existed, it could not be assumed that the separation was irreconcilable and the difficulties existing could not be resolved.... The facts presented before us show the insurer's risk was no greater under the circumstances than was originally contemplated at the time of the issuance of the policy." 238 Md. at 326, 208 A.2d at 599.

*See Zurich Co. v. Monarch Co.*, 247 Md. 3, 7, 230 A.2d 330, 332–333 (1967). *Cf. Peninsula Insurance Co. v. Knight*, 254 Md. 461, 477–478, 255 A.2d 55, 63–64 (1969).

Numerous other cases which have considered the issue have held that a separated spouse remains a resident of the insured spouse's household. *See e.g., Mathis v. Employers' Fire Ins. Co.*, 399 So.2d 273 (Ala.1981) (evidence existed that wife was a resident in her estranged husband's household at the time of the accident where there had been prior separations and reconciliations between them); *Lumbermens Mut. Cas. Co. v. Continental Cas. Co.*, 387 P.2d 104, 106–107 (Alaska 1963) (although the wife had instituted a divorce action, there was evidence that she was still a resident of her husband's household at the time of the accident); *Reserve Ins. Co. v. Apps*, 85 Cal.App.3d 228, 149 Cal.Rptr. 223 (1978) (wife was resident of husband's household even though parties were involved in a trial separation); *Row v. United Services Auto. Ass'n*, 474 So.2d 348 (Fla.App.1985); *Sanders v. Wausau Underwriters Ins. Co.*, 392 So.2d 343, 344 (Fla.App.1981) ("The test for whether a wife is no longer a member of her husband's household is not just physical absence, but physical absence coupled with an intent not to return"); *United Farm Bur. Mut. Ins. Co. v. Brantley*, 176 Ind.App. 178, 375 N.E.2d 235 (1978) (coverage existed for wife even though parties were divorced when the accident occurred, where at the time the parties obtained insurance they were joint titleholders of the car, and they intended that each would be covered while operating the vehicle); *Bearden v. Rucker*, 437 So.2d 1116, 1121–1122 (La.1983) (while the husband had obtained a legal separation and the parties had been living apart for nine months prior to the accident, under the facts of the case the wife was still a resident of her husband's household); *Miroff v. State Farm Fire and Cas. Co.*, 122 Misc.2d 811, 471 N.Y.S.2d 807 (1984); *Southern Farm Bur. Cas. Ins. Co. v. Kimball*, 552 S.W.2d 207 (Tex.Civ.App.1977); *Hawaiian Ins. & G. Co., Ltd. v. Federated Amer. Ins. Co.*, 13 Wash. App. 7, 534 P.2d 48 (1975).

We do not have before us a case where it is clear that the separation between the spouses was permanent, and thus we need not decide what would be the result in such a situation under language like that in the Harleysville policy. In the case before us, it cannot be concluded that the separation between Robin and Carol Forbes was permanent. As previously mentioned, the uncontradicted evidence before the circuit court was that at no time prior to her death had Carol Forbes ever requested a divorce or even discussed a divorce with Robin Forbes. The parties had only been separated for approximately 1½ months before Mrs. Forbes's death. When she left the residence in Baltimore, Mrs. Forbes did not have the address of her driver's license changed or her voter registration changed to reflect the Easton address. Furthermore, the lease Mrs. Forbes entered into in Easton was only on a month-to-month basis, rather than one for a longer term. Carol Forbes remained as a co-owner of the insured vehicle, and she remained listed on the declaration page of the insurance policy. Harleysville acknowledged that if Carol Forbes had been specifically designated as a "named insured" along with Robin Forbes, the premium would have been the same and Carol would have remained covered when she moved to Easton.

Under the circumstances, we hold that Carol Forbes was an "insured" and a "covered person" at the time of the accident.

(b)

As an alternate holding, we agree with the petitioner's argument that the minor children's wrongful death claims were within the mandatory uninsured motorist coverage of Art. 48A, § 541(c), regardless of Carol Forbes's status under the language of the policy.

■ It is true that certain language in Art. 48A, § 541(c)(1) and (3), refers to "death of the insured." As discussed in Part II of this opinion, however, this language merely reflects the General Assembly's contemplation that wrongful death claims are covered by the uninsured motor-

ist provisions and that, when an insured is killed in a motor vehicle accident with an uninsured tortfeasor, the statutory beneficiaries are entitled to wrongful death benefits under the mandatory uninsured motorist coverage. *See, e.g., Williams v. Williams, supra,* 23 Ariz.App. at 193–194, 531 P.2d at 926–927; *Zeagler v. Commercial Union Ins. Co., supra,* 166 So.2d at 617–618; *Sterns v. M.F.A. Mutual Insurance Company, supra,* 401 S.W.2d at 517–520; *Satzinger v. Satzinger, supra,* 156 N.J.Super. at 222–223, 383 A.2d at 756–757; *In re Estate of Reeck, supra,* 21 Ohio St.3d at 128–129, 488 N.E.2d at 197–198. We do not believe, however, that the language of § 541(c)(1) and (3) means that the deceased must always be an "insured" under the particular language of the insurance policy.

 The basic coverage language of § 541(c) is set forth in paragraph (2) and requires coverage "for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries [including death] sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle." The Forbes children's wrongful death claims squarely fall within this statutory language even if their mother at the time of the accident was not an "insured" under the language of Harleysville's policy. The children are "insureds" under the Harleysville policy. Under Maryland's wrongful death statute, the children are legally entitled to damages from the owner or operator of an uninsured motor vehicle because of the death of their mother sustained in an accident arising out of the operation of the uninsured vehicle. In fact, a judgment against the owner and operator of the uninsured vehicle has been recovered on their behalf. The claims of the insured children clearly are embraced by the critical coverage language of § 541(c)(2).

Moreover, the purpose of the uninsured motorist statute supports coverage of the children's wrongful death claims without regard to Carol Forbes's status under the language of the insurance policy. As discussed earlier, the purpose of the statutorily mandated uninsured motorist coverage is

to put the insured (including the insured children) in the same position as they would have been if the tortfeasor had maintained liability insurance. *See Lee v. Wheeler, supra,* 310 Md. at 237, 528 A.2d at 914; *Hoffman v. United Services Auto. Ass'n, supra,* 309 Md. at 171–172, 522 A.2d at 1322; *Nationwide Mut. Ins. Co. v. Webb, supra,* 291 Md. at 737, 436 A.2d at 474. If the tortfeasor in this case had maintained liability insurance, the children's wrongful death claims would have been paid up to the limits of that liability coverage. Since the tortfeasor failed to have liability insurance, and since the children did have uninsured motorist coverage, their claims should similarly be covered up to the limits of the uninsured motorist insurance.

Furthermore, it is clear that the children's wrongful death claims are payable, up to certain statutory limits, by the Maryland Automobile Insurance Fund as successor to the Unsatisfied Claim and Judgment Fund under Art. 48A, §§ 243H–243L, if those claims are not covered by Harleysville. Nevertheless, the purpose of these sections is to cover claims against uninsured tortfeasors where the claimant has no uninsured motorist insurance. *See* §§ 243H (heading of section), 243H(a)(3)(v), 541(c)(2), 541(c)(3). It was not the purpose of §§ 243H–243L to cover claims where the claimant has uninsured motorist coverage but the insurer has placed an exclusion or limitation on coverage in the policy. Instead, the statutory scheme indicates that the uninsured motorist carrier should pay such claims. *See Lee v. Wheeler, supra,* 310 Md. at 238–243, 528 A.2d at 915–917.

Under circumstances like those presented here, numerous cases have held that uninsured motorist claims by insureds are covered by language similar to that in § 541(c) even though the victim of the accident may not have been an "insured" under the language of the policy. For example, in *Auto Club Ins. Ass'n v. DeLaGarza,* 433 Mich. 208, 444 N.W.2d 803 (1989), a wife and husband had lived apart for many years. The wife maintained a motor vehicle insurance policy on her automobile, but the husband was not an

insured under the policy because he did not reside in the wife's household and was not using the insured vehicle. The husband, while changing a tire on an uninsured vehicle on a highway shoulder, was struck and killed by another uninsured vehicle. In holding that the wife could recover wrongful death benefits under her uninsured motorist endorsement, despite the fact that the husband was not an insured under the policy, the Supreme Court of Michigan relied on policy language virtually identical to the language in Art. 48A, § 541(c)(2). The court pointed out that "Mary DeLaGarza is an 'insured person' under the terms of the policy" and that "the policy does not explicitly limit recovery for bodily injury [including death] to those injuries sustained by insured persons." *Auto Club Ass'n v. DeLa-Garza, supra,* 433 Mich. at 213, 444 N.W.2d at 805.

In *Sexton v. State Farm Mut. Auto. Ins. Co.,* 69 Ohio St.2d 431, 433 N.E.2d 555 (1982), the plaintiff and his wife were divorced and lived apart; the plaintiff's minor daughter lived with his wife who had custody of her. The plaintiff maintained an automobile insured by State Farm, with the statutorily required uninsured motorist coverage. The daughter was a passenger in an uninsured motor vehicle and was killed in an accident due to the fault of the driver of the uninsured vehicle. It was clear from the language of the plaintiff's insurance policy with State Farm that the daughter was not an insured under the policy and that the plaintiff was not entitled to recover his wrongful death claim under the wording of the policy's uninsured motorist endorsement. Nevertheless, relying on statutory language essentially the same as Maryland's § 541(c)(2), the Supreme Court of Ohio held that the policy exclusion was void and that the uninsured motorist statute required coverage of the plaintiff's wrongful death claim. The court observed that, "[a]lthough the statute does not indicate who must have sustained the bodily injury, it does not specify that it be the insured." *Sexton v. State Farm Mut. Auto. Ins. Co., supra,* 69 Ohio St.2d at 434, 433 N.E.2d at 558–559. The court went on to state that "[t]he pertinent

language of the [uninsured motorist] statute requires that the insured be legally entitled to recover damages because of bodily injury." 69 Ohio St.2d at 434–435, 433 N.E.2d at 559. As the plaintiff was entitled to recover damages because of the wrongful death of his daughter under the Ohio wrongful death statutory provisions, the court "conclude[d] that Sexton is entitled to recover damages under his uninsured motorist coverage." 69 Ohio St.2d at 435, 433 N.E.2d at 559.

To the same effect are several other cases. *See, e.g., Hinners v. Pekin Insurance Company,* 431 N.W.2d 345 (Iowa 1988); *State Farm Mutual Automobile Ins. Co. v. Selders,* 187 Neb. 342, 346–348, 190 N.W.2d 789, 792 (1971); *Motorists Mut. Ins. Co. v. Speck,* 59 Ohio App.2d 224, 393 N.E.2d 500 (1977); *Grange Ins. Ass'n v. Hubbard,* 35 Wash.App. 407, 410, 413, 667 P.2d 121, 123, 125, *review denied,* 100 Wash.2d 1023 (1983) ("The statute does not contemplate a piecemeal whittling away of liability for injuries caused by uninsured motorists. * * * Any provisions in the policy must yield to the public law. Since she [the insured plaintiff] has the right of action against someone whose negligence caused the death of her son, it makes no difference whether her son is insured under that policy or not"); *but cf. Gaddis v. Safeco Ins. Co. of America,* 58 Wash.App. 537, 794 P.2d 533, *review denied, Estate of Bowers,* 115 Wash.2d 1029, 803 P.2d 324 (1990). Some decisions have taken a position contrary to the above-cited cases. *See Valiant Ins. Co. v. Webster,* 567 So.2d 408 (Fla.1990).

In the present case we hold that the minor children's wrongful death claims were covered under Art. 48A, § 541(c), regardless of the language in Harleysville's policy.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCON-

SISTENT WITH THIS OPINION. COSTS TO BE PAID BY HARLEYSVILLE MUTUAL INSURANCE COMPANY.

McAULIFFE, J., concurs in the result only.